[No. A052630. First Dist., Div. Three. June 15, 1992.]

LILA J. SAKS et al., Plaintiffs and Appellants, v.
DAMON RAIKE AND COMPANY et al., Defendants and Respondents.

**COUNSEL**

Bancroft, Avery & McAlister, Sandra J. Shapiro and Ellen J. Biberfeld for Plaintiffs and Appellants.

Levy, Samrick & Bernard, Evilio M. Grillo, Archer, McComas & Lageson, H. Paul Breslin and Eugene C. Blackard, Jr. for Defendants and Respondents.

## OPINION

CHIN, J.—Lila J. Saks and Marian King, beneficiaries of a testamentary trust (the Trust), appeal from a judgment entered on an order sustaining, without leave to amend, two separate demurrers to their second amended complaint. They sought over $2 million in damages, alleging negligence, breach of contract, and breach of fiduciary duty by both the attorney and real estate broker employed by the trustee. They claim the assets of the Trust were depleted through imprudent transactions. We conclude that Saks and King cannot maintain this action because the trustee is not a party and they did not pursue it in the department of the superior court exercising probate jurisdiction (probate department). Therefore, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On appeal after demurrers are sustained without leave to amend, we must treat the demurrers as admitting all material facts properly pleaded and all reasonable inferences which can be drawn therefrom. (*Bloomberg* v. *Interinsurance Exchange* (1984) 162 Cal.App.3d 571, 574-575 [207 Cal.Rptr. 853].) We therefore assume as true the following facts alleged in the second amended complaint.

Saks and King are two of the three income beneficiaries of the Trust, which was created pursuant to the wills of Joseph and Anna Blankstein, both deceased. Under the terms of the Trust, the three beneficiaries are entitled to regular distribution of all net income of the Trust, and their children are the remainder beneficiaries. Saks, King, and Marvin Blankstein, the third beneficiary, are also designated as trustees of the Trust, along with Crocker National Bank.[1] The Trust instrument requires that the corporate trustee concur in all decisions relating to the sale or acquisition of real property assets of the Trust.

In May 1985, Sumitomo Bank (Sumitomo) succeeded Crocker National Bank as corporate trustee. The trustees retained respondent Gary Shapiro as attorney for the Trust. At that time, the assets of the Trust included an undivided one-half interest in an income-producing parcel of commercial real property in Oakland, known as the King Building. Sometime thereafter, the trustees decided to sell the King Building and acquire replacement property.[2]

After selling the King Building, Shapiro reviewed potential investment properties for the Trust. Among the parcels he considered was one located in

---

[1]Marvin Blankstein has not participated in this action and is not a party to this appeal.

[2]In a parallel proceeding Saks and King filed in the probate department (Trust of Joseph and Anna Blankstein (Super. Ct. San Francisco City & County, No. 254366) (the Probate

Folsom, California (the Folsom Property). The owner of the Folsom Property was Lake Forrest Investment Co., Ltd. (Lake Forrest), the tenant was DataTech Magnetics Corporation (DataTech), and the guarantor of Data-Tech's lease agreement was Shape Inc. (Shape). Shapiro informed the trustees that the Folsom Property constituted a prudent and appropriate investment for the Trust, that it was reasonably priced based on comparable properties in the area, that both DataTech and Shape were in good financial condition, and that DataTech's rent was the market rent for comparable commercial properties.

In May 1988, Sumitomo retained respondent Damon Raike and Company (Raike), a licensed real estate broker, to assist in the purchase of the Folsom Property. In connection with the purchase, Raike agreed to represent the best interests of the Trust and to disclose all material facts. On August 8, 1988, the Trust purchased the Folsom Property from Lake Forrest for $2,680,000.

The second amended complaint alleged that Shapiro and Raike breached their respective agreements with the Trust, as well as their fiduciary duties and duties of care, by failing to disclose the following information, of which they had full knowledge: the proposed purchase price of the Folsom Property was in excess of the reasonable market value for comparable commercial properties in the area; the property was built and improved for single-tenant use; the purchase price was predicated on the existing lease with DataTech and on Shape's guaranty of the lease; DataTech and Shape were not in good financial condition and could not reasonably be expected to meet the obligations of the DataTech lease as they came due; the research and development park where the Folsom Property was located was overdeveloped at the time of sale and had a very high vacancy rate; DataTech's rent was above the market rate; and the Folsom Property had a risk of toxic waste contamination.

The second amended complaint further alleged that Shapiro had breached his duties to the Trust by failing "to adequately and prudently investigate the retention of the King Building as an asset of the Trust; failing to provide adequate advice and recommendations with regard to the retention of the King Building as an asset of the Trust; failing to prudently or reasonably

Action)), they allege that Sumitomo advised the three individual trustees that the King Building was an inappropriate and imprudent investment for the Trust, and that it would refuse to act as corporate trustee unless the other trustees agreed to the sale of the King Building. Saks and King further allege in the Probate Action that Sumitomo failed adequately to analyze or investigate the advisability of disposing of this property prior to insisting on its sale, and that they only agreed to the disposal of the King Building because of their reliance on the advice and representations of Sumitomo. The King Building was sold in or around February 1988.

investigate or analyze the Folsom Property as an acquisition by the Trust; [and] failing to determine that the Folsom Property was not a reasonable, prudent, or economic investment for [the] Trust or for the maintenance and preservation of the interests of either the income or the remainder beneficiaries of the Trust . . . ." Saks and King alleged that had Shapiro and Raike fully disclosed the above information, the Trust would not have purchased the Folsom Property.

At approximately the same time that the Trust purchased the Folsom Property, Shapiro advised Saks and King that they should resign as trustees and permit Sumitomo to act as sole trustee, so that the Trust could be "administered in a more economical and efficient manner . . . ." In reliance on Shapiro's recommendation, Saks and King resigned as cotrustees on September 8, 1988, and Sumitomo became the sole trustee. The second amended complaint alleged that this advice constituted a further breach of Shapiro's duties to Saks and King.

One year later, on September 8, 1989, DataTech, the sole tenant of the Folsom Property, declared bankruptcy; shortly thereafter, the guarantor, Shape, did the same. Since then, the Folsom Property has not produced income for the Trust. In addition, quantities of toxic waste were discovered on the property. It became apparent that the fair market value of the property was substantially less than the price that the Trust had paid for it. The assets of the Trust were substantially impaired, and the income stream to the beneficiaries, including Saks and King, was depleted. Saks and King alleged that their resignation as trustees, based upon Shapiro's advice, resulted in damage by preventing their exercise of control over Sumitomo's administration of the Trust. Saks and King prayed for damages of no less than $2 million.

In January 1990, Saks and King filed this action against Raike and Shapiro, as well as Sumitomo, in the Alameda County Superior Court. After transfer to San Francisco Superior Court, Sumitomo moved to strike Saks and King's claims on the grounds that, under Probate Code section 17000, the probate department of the superior court had exclusive subject matter jurisdiction of all claims regarding the internal affairs of testamentary trusts, and that Saks and King had failed to file a verified petition under Probate Code section 17201. Shapiro and Raike demurred. In July 1990, the superior court granted Sumitomo's motion to strike, granted leave to Saks and King to file a verified petition in the probate department, and sustained Shapiro's

demurrer with leave to amend.[3] Saks and King filed a first amended complaint, to which Shapiro and Raike again filed demurrers, which the court sustained.

At about the same time, Saks and King filed a petition for relief against Sumitomo in the probate department, pursuant to Probate Code sections 16400, 16420, 17200, and 18005. The petition alleged breach of trust, breach of fiduciary duty, and negligence; it sought damages and the removal of Sumitomo as trustee.

Saks and King filed their second amended complaint in the instant action on September 17, 1990. Shapiro and Raike again demurred on the grounds that Saks and King lacked standing to sue because they were not the real parties in interest; that Sumitomo, as trustee, was an indispensable party to the action; and that Saks and King had failed to state claims as third party beneficiaries. In November 1990, the trial court sustained the demurrers without leave to amend. Thereafter it entered judgment for Shapiro and Raike. This appeal followed.

Meanwhile, in December 1990, Saks and King filed an amended petition in the probate department, incorporating the same claims against Shapiro and Raike that the trial court had dismissed on demurrer. Raike filed objections to the amended petition, contending that it should be abated pending Saks and King's appeal of the superior court judgment; that the trustee was the real party in interest with standing to sue agents of the Trust; that Saks and King were not real parties in interest and had no standing to sue Raike; and that Saks and King's remedy was to petition the probate department to compel the trustee to proceed against its agents or to hold the trustee liable and accountable for the acts and omissions of those agents.

In March 1991, the probate department issued an order pursuant to Probate Code section 17202 dismissing all claims against Shapiro and Raike from Saks and King's amended petition as "not reasonably necessary for the protection of the interests of the beneficiaries" of the Trust. In its order, the probate department stated: "If [Saks and King's] claims against the Trustee . . . will not provide a complete remedy for any breach of trust that may have occurred, [Saks and King] may petition this Court to either (1) compel the Trustee to sue Damon Raike and Company and Gary Shapiro, or (2) appoint a trustee ad litem to determine whether the Trustee should sue

---

[3]In their brief, Saks and King state that the court "sustained Respondents' demurrers." However, the record before us does not indicate the disposition of Raike's demurrer.

Damon Raike and Company and Gary Shapiro." On June 21, 1991, Sumitomo filed a cross-complaint for declaratory relief and indemnity against Raike and Shapiro in the Probate Action.[4]

## STANDARD OF REVIEW

■ A demurrer admits all properly pleaded material facts, but not contentions, deductions, or conclusions of fact or law. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; see also *White* v. *Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222].) ■ Although it is generally an abuse of discretion to sustain a demurrer without leave to amend unless the complaint shows that it is incapable of amendment, the court should deny leave to amend if the nature of the claim is clear and no liability exists under substantive law. (*Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 942-943 [143 Cal.Rptr. 255].)

Saks and King cannot contend that the trial court abused its discretion by failing to give them another opportunity to amend, since they concede that they declined further to amend their claims when given an opportunity to do so. Instead, they argue that the trial court erred in sustaining the demurrers because the second amended complaint pleads facts that establish their standing to sue and their entitlement to relief. Unless Saks and King can demonstrate that the second amended complaint sets forth facts sufficient to state a claim for relief under any theory, we must uphold the trial court's decision and affirm the judgment, regardless of the correctness of the specific grounds upon which the court relied. (*Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 20 [51 Cal.Rptr. 881, 415 P.2d 769]; *Air Quality Products, Inc.* v. *State of California* (1979) 96 Cal.App.3d 340, 347-348 [157 Cal.Rptr. 791].)

## TRUST BENEFICIARIES' STANDING TO SUE

In their second amended complaint, Saks and King allege that they "bring this action for the benefit of all beneficiaries of the Trust, including themselves; for the benefit of the subject Trust; and on behalf of the current Trustee of the subject Trust which has failed and refused to bring this action despite demand having been made upon it to do so by plaintiffs." They further allege that the trustee, Sumitomo, "has a conflict of interest which prevents it from bringing this action" because of the parallel Probate Action in which Saks and King allege that Sumitomo is liable, "severally and/or

---

[4]We granted the motions of Shapiro and Raike to augment the record on appeal with documents from the official record of the Probate Action in San Francisco Superior Court No. 254366.

jointly" with Shapiro and Raike for the same acts alleged in the instant complaint.

Code of Civil Procedure section 367 states: "Every action must be prosecuted in the name of the real party in interest, except as provided in Sections 369 and 374 of this code." Section 369 of the Code of Civil Procedure codifies the only applicable exception to that rule.[5] It provides, in pertinent part, as follows: "(a) An executor or administrator, or *trustee of an express trust*, or a person expressly authorized by statute, may sue *without joining with him or her the persons for whose benefit the action is prosecuted.* Except for a person upon whom a power of sale has been conferred pursuant to a deed of trust or mortgage, a person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section." (Italics added.) ▪ If any person other than a real party in interest brings an action, it is subject to general demurrer. (*Powers* v. *Ashton* (1975) 45 Cal.App.3d 783, 787 [119 Cal.Rptr. 729]; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 102-104, pp. 137-140.)

In general, the person who has the right to file suit under the substantive law is the real party in interest. (4 Witkin, Cal. Procedure, Pleading, *supra*, § 103, at p. 138.) ▪ At common law, where a cause of action is prosecuted on behalf of an express trust, the trustee is the real party in interest because the trustee has legal title to the cause. (*Thorpe* v. *Story* (1937) 10 Cal.2d 104, 114 [73 P.2d 1194]; *Powers* v. *Ashton*, *supra*, 45 Cal.App.3d at p. 787; 4 Witkin, Cal. Procedure, Pleading, *supra*, § 117, at p. 153.) The corollary to this rule is that the beneficiary of a trust generally is not the real party in interest and may not sue in the name of the trust. A trust beneficiary has no legal title or ownership interest in the trust assets; his or her right to sue is ordinarily limited to the enforcement of the trust, according to its terms. (*Botsford* v. *Haskins & Sells* (1978) 81 Cal.App.3d 780, 784 [146 Cal.Rptr. 752].) "[B]ecause an ordinary express trust is not an entity separate from its trustees, action may not be maintained in the name of the trust. [Citation.] Thus, absent special circumstances, an action prosecuted for the benefit of a trust estate by a person other than the trustee is not brought in the name of a real party in interest and is demurrable." (*Powers*, *supra*, at pp. 787-788.)

However, where a trustee cannot or will not enforce a valid cause of action that the trustee ought to bring against a third person, a trust beneficiary may seek judicial compulsion against the trustee. In order to prevent

---

[5]Code of Civil Procedure section 374 deals with associations established to manage common interest developments.

loss of or prejudice to a claim, the beneficiary may bring an action in equity joining the third person and the trustee. (*Triplett* v. *Williams* (1969) 269 Cal.App.2d 135, 137-138 [74 Cal.Rptr. 594]; *Woman's etc. Club* v. *Anglo Cal. Nat. Bk.* (1949) 90 Cal.App.2d 850, 852 [204 P.2d 411]; Rest.2d Trusts, § 282; 4 Witkin, Cal. Procedure, Pleading, *supra*, § 118, at pp. 153-154.) The beneficiary may also sue third persons who directly participated with the trustee in breaches of trust. (*Pierce* v. *Lyman* (1991) 1 Cal.App.4th 1093, 1098-1106 [3 Cal.Rptr.2d 236]; Rest.2d Trusts, §§ 291 et seq., 326, 327; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts § 164, p. 1017.)

■ Saks and King argue that, given Sumitomo's conflict of interest and refusal to bring a claim against Shapiro and Raike, these exceptions establish their right to sue on behalf of the Trust. Specifically, Saks and King contend that the trial court erred in failing to find their standing under *Triplett* v. *Williams*, *supra*, 269 Cal.App.2d at pages 137-138.[6] However, their argument fails to take account of the controlling provisions of the Probate Code.

The Probate Code imposes numerous obligations on trustees administering express trusts such as the Trust at issue in this case. It sets out the trustee's basic duty to administer the trust in accordance with the terms of the trust instrument and the provisions of the Probate Code, as well as the trustee's specific duties to take reasonable steps to preserve the trust property and to make it productive, in furtherance of the purposes of the trust. (Prob. Code, §§ 16000, 16006, 16007.) It defines the trustee's general standard of care in administering the trust as the care, skill, prudence, and diligence of a prudent person acting in a like capacity, in an enterprise of like character, and with like aims. (Prob. Code, § 16040.) It defines a breach of trust as "[a] violation by the trustee of any duty that the trustee owes the beneficiary . . ." (Prob. Code, § 16400), and provides that the trustee may also be liable to the beneficiary for various acts or omissions of an agent the trustee employs in the administration of the trust (Prob. Code, § 16401).

The Probate Code also establishes various procedures that trust beneficiaries may invoke to remedy a breach of trust. Although the remedies for

---

[6]Saks and King rely on the following language from *Triplett* v. *Williams*, *supra*, 269 Cal.App.2d 135: "If the trustee cannot or will not enforce the cause of action which the trustee ought to bring against a third person, the beneficiary may seek judicial compulsion against the trustee (Rest.2d Trusts, § 199); or the beneficiary may enforce his rights by a suit in which the third person and the trustee are joined in order that the claim may not be lost or prejudiced (Rest.2d Trusts, § 282; [citations])." (*Id.*, at p. 138.) However, because of the exclusive jurisdiction of the probate department, the trial court in which Saks and King brought the instant action is not the proper forum either to seek judicial compulsion against the trustee or to join the trustee as a party in an action against Raike and Shapiro. Thus, neither of the conditions set forth in *Triplett* has been satisfied in this case. In sustaining the demurrer to the original complaint, the court granted leave to file a petition in the probate department.

breach of trust are not limited to those enumerated, Probate Code section 16421 states that "[t]he remedies of a beneficiary against the trustee are exclusively in equity." Moreover, the Probate Code specifically provides that "[t]he superior court having jurisdiction over the trust . . . has exclusive jurisdiction of proceedings concerning the internal affairs of trusts." (Prob. Code, § 17000, subd. (a).) In addition, the same court that has exclusive jurisdiction over the trust pursuant to this provision also has concurrent jurisdiction over actions and proceedings to determine the existence of trusts; actions and proceedings by or against creditors or debtors of trusts; and "[o]ther actions and proceedings involving trustees and third persons." (Prob. Code, § 17000, subd. (b).) The Law Revision Commission Comment to this section states that "[i]t is intended that the department of the superior court that customarily deals with probate matters will exercise the exclusive jurisdiction relating to internal trust affairs provided by subdivision (a)." (See Cal. Law Revision Com. com., 54A West's Ann. Prob. Code (1991 ed.) § 17000, p. 182.) Section 17001 of the Probate Code makes clear that the court with exclusive probate jurisdiction "is a court of general jurisdiction and has all the powers of the superior court." In sum, the provisions of the Probate Code control the parties and the subject matter of Saks and King's litigation by setting forth the applicable remedies and the proceedings to be followed. Under these provisions, the probate department has exclusive jurisdiction over proceedings involving the internal affairs of the Trust.[7]

In this case, Saks and King did not commence their action in the probate department as the controlling statutes require. Instead of seeking judicial compulsion against Sumitomo in an equitable action, Saks and King filed

---

[7]Saks and King originally brought this action in the Alameda County Superior Court and then transferred it to the Superior Court for the City and County of San Francisco. Both of these superior courts have separate probate departments. Many other counties in California do not have separate probate departments in their superior courts. Our discussion in this opinion is confined to circumstances like those before us, in which the jurisdiction of the superior court has clearly been divided into different departments, with one department customarily dealing with probate matters.

In other counties without such departmental divisions, the practical effect of the language of Probate Code section 17000 is somewhat more ambiguous. Because in these counties there will only be one superior court with no separate probate department, it is not clear as to such jurisdictions what courts the Legislature intended to be distinguishing between in specifying that "[t]he superior court having jurisdiction over the trust" would have "exclusive jurisdiction of proceedings concerning the internal affairs of trusts" *in general.* Contrary to the position of Saks and King, this language self-evidently goes considerably beyond a simplistic statement that one cannot try the internal affairs of a trust in municipal or justice court. We may at the very least conclude that, in the interests of avoiding a multiplicity of parallel actions concerning the same subject, in any given case the trial court that first obtains jurisdiction over a trust under a petition brought pursuant to the Probate Code will necessarily have exclusive jurisdiction of all further proceedings concerning the internal affairs of *that* particular trust.

suit making various legal claims separately against Sumitomo, Raike, and Shapiro. After the trial court dismissed Sumitomo from this lawsuit on the grounds that the probate department had exclusive subject matter jurisdiction, Saks and King did file an equitable action in that court.

Under both the common law and the provisions of the Probate Code governing the administration of trusts, Saks and King's only proper course was to proceed against the trustee in the probate department, seeking either to compel Sumitomo to proceed against Shapiro and Raike, or to remove it and to appoint a trustee ad litem to sue the third parties. (Prob. Code, §§ 16401, 16420, 17000, 17200; *Getty* v. *Getty* (1988) 205 Cal.App.3d 134, 140-142 [252 Cal.Rptr. 342]; *Powers* v. *Ashton, supra,* 45 Cal.App.3d at pp. 787-788.)

We conclude that Saks and King improperly filed their claims against Shapiro and Raike on behalf of the Trust in a civil lawsuit rather than through a verified petition in the probate department, which has exclusive subject matter jurisdiction over the Trust and proceedings concerning its internal affairs. (Prob. Code, § 17000; cf. *Powers* v. *Ashton, supra,* 45 Cal.App.3d at pp. 787-788.) Because of the nature of their claim and the particular jurisdictional and procedural requirements of the law pertaining thereto, Saks and King lack standing to bring their claims in the trial court below. No amendment of their second amended complaint could change this result.[8]

### THIRD PARTY BENEFICIARY STATUS

■ Saks and King also make claims in their second amended complaint on the basis of their alleged status as third party beneficiaries of the agreements between Shapiro, Raike, and Sumitomo. Citing Civil Code section 1559,[9] they urge that the agreements between Sumitomo and both Raike and Shapiro were expressly made for their benefit as beneficiaries of the Trust, and that the alleged breaches of those agreements proximately caused them damage.

The rules governing the respective rights of action of trustees and beneficiaries of express trusts are not the same as those generally applicable to promisees and third party beneficiaries. (4 Witkin, Cal. Procedure, Pleading, *supra,* § 117, at p. 153.) The California Supreme Court has stated that

---

[8]Although the parties do not address this point, we note that the trial court could have, on its own motion, transferred this action to the probate department under Code of Civil Procedure section 396, rather than dismissing it.

[9]Civil Code section 1559 provides that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

"Section 1559 of the Civil Code, providing that a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it, has no application to [a] case where a trust has been created in favor of such third person. Such trust is governed by the provisions of the code with reference to trusts." (*National Bank* v. *Exchange Nat. Bank* (1921) 186 Cal. 172, 180 [199 P. 1].)

Saks and King have cited no authority that would permit trust beneficiaries to maintain an action as third party beneficiaries of contracts between the trustee and agents of the trustee concerning the internal affairs of the trust. Civil Code section 1559 makes no reference to trusts. The general right of a third party beneficiary to sue on a contract made expressly for his or her benefit has no application where a trust has been created in favor of that party, and the contract in question is between the trustee and an agent of the trustee. (*National Bank* v. *Exchange Nat. Bank, supra,* 186 Cal. at p. 180.) The Probate Code clearly manifests the Legislature's intent to vest the exclusive subject matter jurisdiction for all proceedings concerning the internal affairs of trusts in the probate department, and establishes the specific remedies and procedures for trust beneficiaries. (Prob. Code, §§ 16401, 16420, 16421, 17000, 17200.)

Aside from the clear dictates of both statutory and case law, there are strong reasons of public policy for upholding the trial court's dismissal of Saks and King's second amended complaint. Although the California Supreme Court has held that under certain circumstances, agents, including attorneys, may be liable in tort to third persons not in privity who are affected by their negligence (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 587-591 [15 Cal.Rptr. 821, 364 P.2d 685]; *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 648-650 [320 P.2d 16, 65 A.L.R.2d 1358]), the principle of these cases has never been extended to trust beneficiaries and agents or employees of the trustee. Indeed, it has recently been held that the beneficiaries of an estate are merely incidental beneficiaries of the performance of an attorney employed by the estate administrator. (*Goldberg* v. *Frye* (1990) 217 Cal.App.3d 1258, 1267-1269 [266 Cal.Rptr. 483].) To permit a third party beneficiary cause of action in a case such as this, parallel to the comprehensive remedies and procedures established by the Probate Code, would run counter to the clear legislative intent to make the probate department the exclusive arbiter of these kinds of trust disputes.

Moreover, it is important to remember that Saks and King have brought two parallel lawsuits concerning the same facts in two different courts. The substantive basis for the real party in interest rule is to prevent just this kind of multiplication of lawsuits arising from the same facts, in

order to protect potential defendants from the harassment, vexation, and expense of having to meet several lawsuits from different claimants involving the same claim or demand; and to insure that such defendants will be protected from further annoyance or loss in the future once a judgment is entered in a lawsuit on such a claim. (*Anheuser-Busch, Inc.* v. *Starley* (1946) 28 Cal.2d 347, 351-352 [170 P.2d 448, 166 A.L.R. 198]; *Giselman* v. *Starr* (1895) 106 Cal. 651, 657-658 [40 P. 8]; 4 Witkin, Cal. Procedure, Pleading, *supra*, § 103, at pp. 138-139.)

Saks and King must litigate their claims in a single forum. In light of the exclusive subject matter jurisdiction of the probate department of the superior court, it is clear they pursued this action in the wrong forum.

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.