Concurring opinion filed by Circuit. Judge O’Malley. Dissenting opinion filed by Circuit Judge Newman. Reyna, Circuit Judge. Advanced Video Technologies LLC appeals an order from the United States District Court for the Southern District of New York that dismissed its complaints for lack of standing. The district court based its decision on the ground that a co-owner of the patent was not a party to the actions, and the co-owner’s ownership interests in the patent were not transferred to Advanced Video. We affirm. Background This appeal involves U.S. Patent No. 5,781,788 (“’788 patent”), entitled “Full Duplex Single Clip- Video Codec.” The technology of the patent is not at issue. The single issue involved in this- appeal is whether a co-inventor of the patent transferred her co-ownership interests in the patent under the terras of an employment agreement. The ’788 patent lists three co-inventors: Beng-Yu “Benny” Woo, Xiaoming Li, and Vivian Hsiun. The invention was created while the co-inventors were employed with Infochips Systems Inc. (“Infochips”). Two of the inventors, Mr. Woo and Ms. Li assigned their co-ownership interests in the patent to Advanced Video. The only co-ownership interests involved in this appeal are those of Ms. Hsiun. Advanced Video maintains that it obtained Ms. Hsiun’s co-ownership interests in the invention through a series of transfers. According to Advanced Video, the first transfer was made before the ’788 patent application was filed, pursuant to a January 1992 Employment Agreement (“Employment Agreement”) between Ms. Hsiun and Infochips. The second transfer occurred when Infochips’ “receivables,” which had been pledged as security in a financing agreement between Infochips and an entity called Lease Management Services, were seized by Lease Management when Infochips went out of business in 1993. The third transfer occurred in 1995 when Lease Management sold the Infochips assets to Mr. Woo, one of the three co-inventors. A fourth transfer occurred when Mr. Woo assigned his ownership interest in the ’788 patent to an entity called AVC Technology Inc. (“AVC”).[1] In 1995, AVC filed the parent application of the ’788 patent.[2] Two of the three inventors, Mr. Woo and Ms. Li, executed assignments of their ownership interest in the invention to AVC at that time. Ms. Hsiun, however, refused to assign her interests. AVC filed a petition before the U.S. Patent and Trademark Office (“PTO”) requesting that it be permitted to prosecute the application without an assignment from Ms. Hsiun. In support, AVC filed a declaration attaching the Infochips Employment Agreement and financial documents between Infochips and Lease Management purporting to show that Mr. Woo and AVC had acquired Ms. Hsiun’s ownership rights. The PTO granted AVC’s petition and the ’788 patent was issued to AVC. AVC was later dissolved, but not before purporting to transfer its assets to its successors, and ultimately, Advanced Video. In 2011, Advanced Video filed three patent infringement lawsuits against Appel-lees in the United States District Court for the Southern District of New York. The district court found, however, that AVC had failed to comply with Delaware statutory law governing the distribution of assets for dissolved corporations, and that no patent rights had transferred from AVC to Advanced Video. Because Advanced Video had no ownership interest in the patent, the cases were dismissed for lack of standing. Advanced Video Techs., LLC v. HTC Corp., 103 F.Supp.3d 409 (S.D.N.Y. 2015).[3] In 2015, the Delaware Court of Chancery appointed a Receiver to transfer to Advanced Video any patent rights held by AVC. Advanced Video Techs. LLC v. HTC Corp., No. 15 Civ. 4626 (CM), 2016 WL 3434819, at *5-6 (S.D.N.Y. June 14, 2016). After the transfer was achieved, Advanced Video filed three new patent infringement lawsuits against Appellees. In response to a motion to dismiss, Advanced Video argued before the district court that it had acquired Ms. Hsiun’s ownership rights via the aforementioned series of transfers beginning with a transfer from Ms. Hsiun to Infochips under the terms of the Employment Agreement. According to Advanced Video, the transfer was effected pursuant to three provisions of the Employment Agreement: a “will, assign” provision, a trust provision, and a quitclaim provision. The “will assign” and trust provisions provide as follows: I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and will assign to the Company all my right, title, and interest in and to any and all inventions, original works of authorship, developments, improvements or trade secrets which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company. J.A. 258 (emphasis added). The quitclaim provision provides as follows: I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have infringement [sic] of any patents, copyrights, or mask work rights resulting from any such application assigned hereunder to the Company. J.A. 260. (emphasis added). The district court concluded that these provisions did not effect a transfer of Ms. Hsiun’s ownership rights to Advanced Video. As such, because Ms. Hsiun was not a party to' the suit, the district court dismissed the case for lack of standing. Advanced Video appeals. Discussion 1. Standard of Review This court reviews de novo a district court’s dismissal for lack of standing. 1sr. Bio-Eng’g Project v. Amgen Inc., 475 F.3d 1256, 1262-63 (Fed. Cir. 2007); Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1376 (Fed. Cir. 2000). Factual findings relevant to a lack of standing determination are reviewed for clear error. Enovsys LLC v. Nextel Commc’ns, Inc., 614 F.3d 1333, 1340-41 (Fed. Cir. 2010). 2. “Will Assign” Advanced Video argues that Ms. Hsiun’s ownership rights transferred immediately upon execution of the Employment Agreement. In support, Advanced Video points to “will assign” language contained in the agreement. Section 2.b of the Infochips Employment Agreement provides that Ms. Hsiun “will assign to the Company” all her right, title, and interest in any inventions. The district court found that “will” invoked a promise to do something in the future and did not effect a present assignment. Advanced Video Techs., 2016 WL 3434819, at *8-9. The court relied on Arachnid, Inc. v. Merit Industries, Inc., 939 F.2d 1574, 1576 (Fed. Cir. 1991), which held that “will be assigned” language in a consulting agreement did not itself effect an assignment but was merely a promise to assign. Id. at 1576, 1580-81. The district court also reasoned that the trust provision of the Employee Agreement undermined an immediate assignment because Ms. Hsiun could not immediately assign the rights and at the same time hold them in trust. Advanced Video Techs., 2016 WL 3434819 at *9. We agree with the district court that no present assignment exists in the Employment Agreement. The . “will assign” language alone does not create an immediate assignment of Ms. Hsiun’s rights in the invention to Infochips. 3. Trust Assignment Advanced Video argues that “will hold in trust” created an immediate trust under California law in favor of Infochips. Even were we to determine that Ms. Hsi-uris interests in the invention were immediately placed in trust, it does not follow that those interests were automatically, or ever, actually transferred out of trust in favor of Infochips. Absent a transfer, Ms. Hsiun would continue to hold the invention rights as a trustee. While Advanced Video could potentially seek to enforce its alleged ownership rights, or allege a breach of Ms. Hsiuris duties as a trustee by her .failure to transfer those rights, by bringing an action against Ms. Hsiun, no party brought such an action. See, e.g., Jim Arnold Corp. v. Hydrotech Sys., 109 F.3d 1567, 1578 (Fed. Cir. 1997) (stating that a party needs to file a state-law based, claim to obtain title to the patent before bringing a patent infringement claim). Since Advanced Video has not, sought to enforce any obligation Ms. Hsiun might have under the trust, .it ultimately has no standing to bring a patent infringement action. See Abrams Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1366 (Fed. Cir. 2010). Under California trust law a trust beneficiary “generally is not the real party in interest,” “may not sue in the nathe of the trust,” and “has no legal title or ownership interest in the trust assets.” Saks v. Damon Raike & Co., 7 Cal.App.4th 419, 8 Cal.Rptr.2d 869, 874-75 (1992) (citing Botsford v. Haskins & Sells, 81 Cal.App.3d 780, 146 Cal.Rptr. 752, 754 (1978)). The dissent cites Kadota Fig Association of Producers v. Case-Swayne Co., 73 Cal.App.2d 796, 167 P.2d 518 (1946), for the proposition that the real party in interest in California trust disputes is actually the beneficiary, not the trustee. Dissent at 6. Kadota does not apply, however, because it involves a “business trust,” which, under California law, is considered “a type of business organization” and not the type of trust in. this case. Goldwater v. Oilman, 210 Cal. 408, 292 P. 624, 627 (1930). Even if Advanced Video is correct that Ms. Hsi-uris rights are held in trust, Advanced Video, as a trust beneficiary, cannot maintain a patent infringement suit where Ms. Hsiun is not a party, nor can she as a co-owner of the patent be involuntarily.joined as a plaintiff, except under limited circumstances which do not apply here.[4] 4. Quitclaim Assignment . Advanced Video maintains that it has standing because it eventually acquired Ms. Hsiuris ownership interest in the invention when she quitclaimed her interest to Infochips under the terms of the Employment Agreement. Section 2.e of the Employment Agreement provides: ■ • ■ I hereby waive and quitclaim to the Company any and all claims, of any -nature whatsoever, which I now or may hereafter have infringement [sic] of any patents; copyrights, or, mask work rights resulting from any such application assigned hereunder to the Company. J.A. 260. Advanced Video argues that “assigned hereunder”' should essentially be read to mean all claims “assignable hereunder,” and that rights that Ms. Hsiun promised she “will assign” were immediately quit-claimed under the Employment Agreement. The Employment Agreement, however, does not . provide “assignable hereunder” language. Advanced Video cites no authority showing that, “assigned hereunder” covers patent rights that could have been assigned under a contract, but were never .actually assigned. The quitclaim provision waives Ms. Hsi-un’s rights to interests in any patent rights that she assigned under the agreement. But, as no patent rights were ever assigned to Infochips, the quitclaim provision has no application. Accordingly, we find that the quitclaim provision in the Employment Agreement did not effect an assignment of the 788 patent from Ms. Hsiun to Infochips, AVC, or Advanced Video. The dissent argues that it may be discerned from the Employment Agreement that the parties intended any ownership interest in inventions developed during Ms. Hsiun’s employment with In-fochips were the property of Infochips. Dissent at 7-10. But, the terms of the Employment Agreement provide otherwise. Generally, courts should not deviate from unambiguous provisions unless they lead to “absurd -results.” Shaw v. Regents of Univ. of Cal. 58 Cal.App.4th 44, 67 Cal.Rptr.2d 850, 855 (1997); see also Coast Plaza Doctors Hosp. v. Blue Cross of Cal., 83 Cal.App.4th 677, 99 Cal.Rptr.2d 809, 815 (2000). In this instance, the Employment Agreement is unambiguous and, as stated, there is no reason to believe that- the parties intended a present assignment. This court has previously found such agreements to assign insufficient to confer standing. See IpVenture, Inc, v. Prosiar Comput., Inc., 503 F.3d 1324, 1327 (Fed. Cir. 2007). Conclusion Advanced Video does not have full ownership of the, 788 patent. Ms. Hsiun is neither a party to the suits, nor has she consented to these suits. Advanced Video, therefore, has no standing to maintain its suit. Accordingly, we affirm the district court’s dismissal of the cases. AFFIRMED Costs No costs. . We only address the validity of the purported transfer under the Employment Agreement. . A continuation of that patent application, filed in 1997, ultimately issued as the '788 patent in 1998. .The district court also awarded attorneys’ fees, finding the case “exceptional” under 35 U.S.C. § 285. The fee award was affirmed by this court. Advanced Video Techs., LLC v. HTC Corp., 677 Fed.Appx. 684 (Fed. Cir. 2017). . See Fed. R. Civ. P. 19; STC.UNM v. Intel Corp., 754 F.3d 940, 945-46 (Fed. Cir. 2014) (explaining that the right of a co-owner “to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for involuntary .. joinder”). Under California trust law, a trust beneficiary may seek judicial compulsion against a trustee who refuses to enforce a valid cause of action, and "[i]n order to prevent loss of or prejudice to a claim, the beneficiary may bring an action in equity joining the third person and the trustee,” Saks, 8 Cal.Rptr.2d at 875 (citing Triplett v. Williams, 269 Cal.App.2d 135, 74 Cal.Rptr. 594, 596 (1969)). Here, Advanced Video has not attempted to join Ms. Hsiun as a trustee or otherwise bring an action against Ms. Hsiun. Accordingly, we do not address the question of whether Ms. Hsiun could be involuntarily joined as trustee under California trust law and Fed. R. Civ. P. 19(a)(l)(B)(i).