PEÑA, J.
*689 *1210 Plaintiff Larry Brown obtained assignments from 1,117 borrowers transferring (1) a 100 percent interest in causes of action relating to their home loans and (2) a 5 percent ownership interest in the real estate securing the home loans. Brown then pursued those causes of action by filing a lawsuit against various entities involved in originating, servicing, or enforcing those loans. Some of the defendants filed a motion to compel joinder of the borrowers, contending the borrowers were both necessary and indispensable *1211 parties to the litigation under California's compulsory joinder statute, Code of Civil Procedure section 389.[1] The trial court ordered the joinder of the borrowers and Brown filed a petition for writ of mandate to challenge that order.
First, as to the interpretation and application of section 389 to the facts presented, we conclude, in the unpublished portion of the opinion, that joinder of the borrowers was warranted under subdivision (a)(2)(i) of section 389. The borrowers have an interest in the protection from personal liability provided by California's antideficiency statutes. The complaint seeks to have the deeds of trust securing the loans declared void or unenforceable, which would render the loans unsecured. If the loans became unsecured, the borrowers might lose the protections of the antideficiency statutes. The borrowers' absence from this litigation may impair or impede their ability to protect their interest in the benefits provided by the antideficiency statutes-that is, immunity from personal liability for the loan balance or any deficiency judgment. Therefore, we conclude the conditions for joinder under *690 subdivision (a)(2)(i) of section 389 are present in this case.
Brown argues that, even if joinder is required under section 389, he may sue without joining the borrowers because of the exception contained in section 369, subdivision (a)(3). Under that provision, "a person with whom ... a contract is made for the benefit of another" is authorized to "sue without joining as parties the persons for whose benefit the action is prosecuted." (Ibid .) Brown contends the assignments qualify as contracts made for the benefit of the borrowers, and he is a person prosecuting the action for the benefit of the borrowers. In the published portion of the opinion, we disagree with this interpretation and application of section 369. In our view, section 369 applies when a fiduciary relationship exists between the plaintiff and the persons for whose benefit the action is prosecuted. Here, Brown has no fiduciary relationship with the borrowers. From a textual perspective, we interpret the reference to a contract made for the benefit of another to mean for the sole benefit of another, not for the mutual benefit of the plaintiff and another person. Here, the assignments were for the mutual benefit of Brown and the borrowers and, therefore, we conclude section 369, subdivision (a)(3) does not apply and does not authorize Brown to proceed without joining the borrowers.
We therefore deny the petition for writ of mandate and lift the stay.
*1212 FACTS
In July 2012, Life Savers Concepts Association, Inc. (Life Savers), was incorporated as a North Carolina corporation and then registered with the California Secretary of State to do intrastate business in California. Reverend Nigel Johnson is the president of Life Savers. His ministry is nondenominational, uses the name Lifehouse International Ministries, and is based in Stockton, California. Prior to joining Life Savers, Johnson had been a real estate agent, and many of his clients were facing foreclosure. In pursuit of this mission, Life Savers entered into membership agreements with homeowners and former homeowners. From Life Savers' perspective, its members banded together so they could better seek relief from improper actions relating to their home loans and the real property securing the loans.
The members transferred their claims (or the claims of their living trust) against the entities that made, held or serviced their home loans, to Life Savers by executing documents labeled "Agreement for Assignment and Transfer of Rights of Legal Claim." The 25 examples of these agreements attached to Brown's pleading were executed from February 14, 2013, through April 16, 2015.
When the members executed the agreements for assignment and transfer of rights of legal claim, most also executed grant deeds that transferred to Life Savers a 5 percent ownership interest in the real property securing their loans. The grant deeds relevant to this lawsuit total approximately 1,000 pages, so Brown attached 25 examples of the grant deeds to his pleading. The example grant deeds state they granted Life Savers "a 5% ownership interest in the following described real property ...." It appears the purpose of the transfers of an interest in the real property was to assure Life Savers qualified as a "real party in interest" with standing to pursue the assigned causes of action. (§ 367 [California's general standing requirement].)
On March 29, 2013, Life Savers and Brown entered into an assignment agreement. One counterpart of this agreement was signed on behalf of Life Savers by Frank Benjamin, as executive vice president. A second counterpart was signed on *691 behalf of Life Savers by Johnson, as president, and Dawn Burt, as vice president. The basic purpose of the agreement was to transfer to Brown all rights that had been assigned to Life Savers by the homeowners and former homeowners. On August 13, 2014, and December 10, 2015, Life Savers executed a second and a third assignment that transferred to Brown all the rights to pursue claims that had been assigned to Life Savers.
Contemporaneous with the second assignment of claims to Brown, Life Savers executed a document that assigned "all of its interest in the Grant *1213 Deeds assigned it by all LifeSavers members" to Brown. Similarly, when Life Savers executed the third assignment to Brown, it also executed an assignment agreement that quitclaimed to Brown all of Life Savers' right, title and interest in the real property conveyed to Life Savers by the grant deeds from its members. Based on these assignments, Brown claims to hold a 5 percent ownership interest in each of the properties that secured the home loans of the members.[2]
The wording of the agreements for assignment and transfer of rights of legal claim to Life Savers and the subsequent assignments from Life Savers to Brown has created disputes about meaning, scope, and effectiveness of the transfers. (See 7 Cal.Jur.3d (2011) Assignments, §§ 42-44, pp. 68-72 [construction and legal effect of assignments].) Those disputes are not addressed in this opinion. Instead, we assume the wording of the assignment documents effectively transferred (to the extent allowed by California law) all of the rights and ownership interests that Brown contends he holds. In other words, we assume Brown is the complete (i.e., 100 percent) owner of the causes of action and is a 5 percent owner of the real property.
PROCEEDINGS
In April 2015, Brown filed a civil action in Fresno Superior Court to pursue the claims the borrower-assignors had transferred to him. In December 2015, Brown filed a second amended complaint (complaint), which was the operative pleading when the trial court considered and decided the motion to compel joinder that is the subject of this writ proceeding.[3]
Exhibit A to the complaint listed 1,117 borrower-assignors in alphabetical order and identified the real property securing their loans by street address and assessor's parcel number.[4] The complaint organized the borrower-assignors into three categories. In the first category, composed of borrower-assignors identified in exhibit K to the complaint, no foreclosure proceeding had been initiated at the time the complaint was filed (Group K). The second category contained borrower-assignors for whom a notice of default and election to sell under deed of trust had been recorded. These borrower-assignors were listed in exhibit L to the complaint (Group L). The third category contained the borrower-assignors whose property had been sold in *1214 foreclosure. The borrower-assignors in this group were listed in exhibit M to the complaint (Group M). Brown alleged he brought the lawsuit solely in the capacity *692 as the assignee of claims of the borrower-assignors.
The defendants named in the complaint were Bank of America, N.A.; Countrywide Financial Corporation; BAC Home Loans Servicing, LP; ReconTrust, N.A.; Mortgage Electronic Registration Systems, Inc. (MERS); MERSCORP Holdings, Inc.; The Bank of New York Mellon; U.S. Bank, N.A.; Aurora Bank FSB, a federal savings bank; JPMorgan Chase & Co.; JPMorgan Chase Bank, National Association; Ocwen Loan Servicing, LLC; Wells Fargo Bank, N.A.; DOCX, LLC, a Georgia limited liability company; and Lender Processing Services, Inc., a Delaware corporation.[5] The complaint set forth causes of action labeled (1) wrongful foreclosure, (2) reformation, (3) injunctive relief, (4) declaratory relief, (5) cancellation of instruments, (6) violation of Government Code section 8214, (7) violation of Penal Code section 496,[6] (8) conversion, (9) intentional interference with contract, (10) negligent interference with contract, (11) accounting, and (12) injunctive relief for violation of Civil Code section 2923.55.
The complaint alleged a variety of actions taken by the defendants in connection with the loans and real property security were unlawful or invalid. Brown alleged transfers of the promissory notes and deeds of trust to the trustee of a real estate mortgage investment conduit (REMIC) violated the terms of the REMIC's pooling and servicing agreement and federal tax laws specifying when REMIC's qualify as pass-through entities rather than taxable entities. In particular, Brown alleged transfers were attempted more than three months after the closing date of the REMIC. He also alleged the trustee of the REMIC could not enforce the debt without physical possession of the promissory note. Other alleged wrongs included (1) "forging and backdating of documents, often called 'robosigning' "; (2) "foreclosures prosecuted by parties without rights to do so"; (3) a general failure to keep adequate records; and (4) false notarizations of documents relating to assignments of the loans or relating to foreclosures under the deeds of trust.
*1215 The prayer for relief in the complaint requested general damages exceeding $800 million, special damages in an amount to be proven at trial, an accounting between the borrower-assignors and defendants, and the recovery of the amounts the accounting shows are due to the borrower-assignors. It also requested reformation of each deed of trust "otherwise designating MERS as the nominee of the named beneficiary, to embody the true agreement of the parties, modified to become mortgages with the current holder of the related Promissory Note as mortgagee." Under the causes of action for declaratory relief and cancellation of instruments, the complaint requested the deeds of trusts, the notices of default and documents purportedly *693 transferring the secured loans to the trustee of a securitized trust (i.e., a REMIC) be decreed void. The request for injunctive relief sought to prevent all sales or attempted sales of any of the properties securing the loans pursuant to the powers of sale contained in the deeds of trust.
Joinder Motion
Brown's complaint was challenged in a variety of motions and a demurrer. In this proceeding, we are concerned with the February 2016 motion of DOCX, LLC, and Lender Processing Services, Inc.[7] (jointly, DOCX), for orders (1) compelling joinder of the borrower-assignors as necessary parties and (2) dismissing the action for failing to join indispensable parties. Later in February, defendants Aurora Commercial Corp., as successor entity to Aurora Bank, FSB; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; and U.S. Bank, National Association joined in the motion to compel joinder of the borrower-assignors. In March 2016, Brown filed an opposition to the joinder motion, arguing each of the claims was assignable and California's joinder statute did not require the joinder of the borrower-assignors.
Trial Court's Ruling
On March 30, 2016, the trial court held a hearing on the pending motions and demurrer. On June 3, 2016, the trial court signed and filed a written order granting the motion for joinder as to the borrower-assignors who assigned a partial ownership interest in the real property that secured their loan. The order directed the parties, within 20 days, "to meet and confer on a process to *1216 identify the parties subject to joinder and discuss, if applicable, a procedure by which to join such parties." The rationale for the trial court's order is described in part II.D, post .
Petition for Writ of Mandate
On June 29, 2016, this court received Brown's petition for writ of mandate challenging the order compelling joinder of the borrower-assignors. On July 1, 2016, this court issued an order staying the trial court's order "insofar as it relates to the motion for joinder and directs the parties 'to meet and confer within the next 20 court days regarding a procedure for joining the partial assignors.' " On July 22, 2016, after reviewing Brown's petition and supporting papers, we issued an order to show cause, established a schedule for filing the defendants' return and Brown's traverse, and extended the stay pending further order of this court. DOCX-the parties filing the motion to compel joinder-filed a return identifying themselves as real parties in interest.
Related Federal Lawsuits
On September 12, 2012-before Brown received Life Savers' assignment of any of the claims raised in the present action-Brown filed a complaint in the Superior Court for Riverside County as a self-representing litigant. In November 2012, the lawsuit was removed to the United States District Court for the Central District of California, Eastern Division. In April 2013, *694 Brown filed an amended complaint asserting 23 causes of action against 21 named defendants. Subsequently, Brown obtained legal representation and, in September 2013, filed a second amended complaint with the federal court. That pleading pursued assigned claims relating to 1,349 properties and alleged seven causes of action against 14 named defendants.
The defendants in the federal action, including Bank of America, MERS and others, filed a motion to dismiss, arguing Brown lacked standing to sue. The district court determined the facts alleged did not establish Brown's standing and granted the motion to dismiss without prejudice and with leave to amend. (Brown v. Bank of America , N.A. (C.D.Cal., Feb. 24, 2014, No. CV-12-02009-TJH) [2014 U.S. Dist. Lexis 197478; 2014 WL 12707378].) The district court directed that if Brown filed a third amended complaint, "it shall be limited to a single mortgage," and that "claims regarding each of the remaining 1,348 mortgages shall be filed in separate actions." (2014 U.S. Dist. Lexis 197478 at p. *4; 2014 WL 12707378 at p. *2.)
Brown chose not to file a third amended complaint and, instead, filed an appeal. On August 18, 2016-about four weeks after we issued the order to show cause in this writ proceeding-the Ninth Circuit Court of Appeals filed *1217 a memorandum decision affirming the dismissal. ( Brown v. Bank of America , N.A. (9th Cir. 2016) 660 Fed.Appx. 506.) The court stated Brown's standing was entirely dependent upon a valid assignment. ( Id . at p. 509.) The court concluded Brown failed to provide proof that he had been assigned claims by the borrowers he purported to represent[8] and, therefore, he failed to carry his burden of establishing the district court possessed subject matter jurisdiction. ( Id . at pp. 508-509.)
On August 8, 2014-about five and a half months after the district court dismissed the first federal action-Brown filed a second lawsuit in the United States District Court for the Central District of California, Western Division. The second federal lawsuit related to approximately 1,200 additional loans and properties. The defendants in the second federal lawsuit filed a motion to dismiss, contending Brown had improperly joined claims relating to the 1,200 deeds of trust and was collaterally estopped by the February 2014 order from relitigating the issue. In December 12, 2014, the district court granted the motion to dismiss, agreeing with the defendants that Brown was collaterally estopped from relitigating the issue of joinder of more than one deed of trust. Brown chose not to file an amended complaint pursuing claims related to a single loan and property. He also chose not to appeal the order dismissing the second federal lawsuit without prejudice. About three months after Brown informed the federal district court of his choices, he filed the present lawsuit in the Fresno Superior Court.
DISCUSSION
I.-II.**
III. Interpretation and Application of Section 369
A. Contentions of the Parties
Brown contends that, even if the application of section 389 leads to the conclusion that the borrower-assignors are necessary parties, a statutory exception authorizes him to bring the action without *695 joining the borrower-assignors. The statutory exception is contained in subdivision (a)(3) of section 369, which provides that certain "persons may sue without joining as parties the persons for whose benefit the action is prosecuted," including "a person *1218 with whom ... a contract is made for the benefit of another." Brown contends he, as Life Savers' assignee, is prosecuting the action expressly for the benefit of the borrower-assignors and, therefore, section 369 authorizes him to prosecute the action without joining the borrower-assignors.
In response, DOCX contends section 369 provides an exception to the general requirement in section 367 that a claim must be prosecuted by the real party in interest, and this exception allows fiduciaries to assert claims without joining the beneficiaries in the lawsuit. DOCX contends Brown is not a fiduciary of the borrower-assignors, and therefore, Brown is not covered by the provisions of section 369 and cannot rely on the exception.
B. Statutory Text
The parties' dispute about the meaning of section 369 presents this court with questions of statutory interpretation, which are questions of law subject to independent review. ( Western States Petroleum Assn. v. Board of Equalization (2013) 57 Cal.4th 401, 415, 159 Cal.Rptr.3d 702, 304 P.3d 188.) The analytical process of statutory construction begins with the statute's actual words, the most reliable indicator of legislative purpose. ( Even Zohar Construction & Remodeling , Inc. v. Bellaire Townhouses , LLC (2015) 61 Cal.4th 830, 837-838, 189 Cal.Rptr.3d 824, 352 P.3d 391.) Here, the relevant words in section 369 also appeared in earlier versions of the statute. Consequently, our examination of the statutory text includes prior versions of section 369 as well as a related provision establishing historical context for the language in question. (See Smiley v. Citibank (1995) 11 Cal.4th 138, 155, 44 Cal.Rptr.2d 441, 900 P.2d 690 [statutory language is construed in its statutory and historical context]; California Housing Finance Agency v. Patitucci (1978) 22 Cal.3d 171, 177, 148 Cal.Rptr. 875, 583 P.2d 729 [historical context].)
1. Section 369 before 1988 Amendment
The original version of section 369 was amended by the Legislature in 1988. (See Stats. 1988, ch. 530, § 2, p. 1965.) Before the amendment, former section 369 provided:
" 'An executor or administrator, or trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the persons for whose benefit the action is prosecuted. A person with whom , or in whose name, a contract is made for the benefit of another , is a trustee of an express trust, within the meaning of this section.' " ( Bank of Orient v. Superior Court (1977) 67 Cal.App.3d 588, 594, fn. 1, 136 Cal.Rptr. 741, italics added.)
The italicized words appear in the current version of section 369 and are the words Brown contends apply to him. Specifically, Brown argues that he is *1219 a person with whom a contract was made for the benefit of the borrower-assignors, and as a result, he may sue without joining the borrower-assignors.
2. Section 369 from 1989 through 1992
In 1988, the Legislature revised section 369 so its provisions would not apply to a particular type of trustee-namely, a "trustee upon whom a power of sale has been conferred pursuant to a deed of trust or mortgage." (Leg. Counsel's Dig., Assem. Bill No. 1830, 4 Stats. 1988 (1987-1988 Reg. Sess.) Summary Dig., pp. 159-160.) The language added in 1988 to create this exemption is not relevant to the questions of statutory interpretation before us.
*696 Consequently, the text of the revised version of section 369 in effect from 1989 through 1992 is not set forth in this opinion. (See Stats. 1988, ch. 530, § 2, p. 1965; Saks v. Damon Raike & Co. (1992) 7 Cal.App.4th 419, 427, 8 Cal.Rptr.2d 869 [quoting former § 369, subd. (a) ].)
3. Section 369's Current Wording
In 1992, the Legislature amended section 369 again as part of a comprehensive revision of the statutes governing litigation involving decedents. (Stats. 1992, ch. 178, § 12, p. 888; see Litigation Involving Decedents (Apr. 1992) 22 Cal. Law Revision Com. Rep. (1992) p. 895; 3 Witkin, Cal. Procedure, supra , Actions, § 12, p. 74.) As a result of the 1992 amendment, section 369 now provides:
"(a) The following persons may sue without joining as parties the persons for whose benefit the action is prosecuted :
"(1) A personal representative, as defined in subdivision (a) of Section 58 of the Probate Code.
"(2) A trustee of an express trust.
"(3) Except for a person upon whom a power of sale has been conferred pursuant to a deed of trust or mortgage, a person with whom , or in whose name, a contract is made for the benefit of another .
"(4) Any other person expressly authorized by statute." (Italics added.)
The 1992 amendment reorganized section 369's text and clarified terminology. (Litigation Involving Decedents, supra , 22 Cal. Law Revision Com. Rep., at p. 923.) "These changes [we]re technical and not substantive." (Ibid .) Thus, the California Law Revision Commission's comments reinforce our *1220 conclusions that the prior versions of section 369 are relevant to the questions of statutory construction presented in this case.
4. Relationship to Section 367
The foregoing versions of section 369 establish part of the historical context for the language under consideration. Another part of the historical context is provided by the two most recent versions of section 367-the statute containing California's general standing requirements. (See Weatherford v. City of San Rafael , supra , 2 Cal.5th at p. 1249, 218 Cal.Rptr.3d 394, 395 P.3d 274 [general requirements for standing under § 367].)
In 1976, the Legislature amended the standing requirements in section 367 to read as follows:
"Every action must be prosecuted in the name of the real party in interest, except as provided in Sections 369 and 374 of this code." (Stats. 1976, ch. 595, § 1, p. 1439;[16] see Saks v. Damon Raike & Co. , supra , 7 Cal.App.4th at p. 427, 8 Cal.Rptr.2d 869 [quoting former § 367].)
This version of section 367 was modified by the 1992 legislation that revised section 369. The amendment to section 367 eliminated the reference to sections 369 and 374 and replaced it with general language. (See Stats. 1992, ch. 178, §§ 10 & 12, p. 888.) As a result, section 367 now provides:
"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute ." (Italics added.)
*697 The California Law Revision Commission described the 1992 amendment to former section 367 as follows:
"Section 367 is amended to eliminate the obsolete listing of statutes that permit prosecution of an action in the name of a person other than the real party in interest. Statutes that permit prosecution in the name of a person other than the real party in interest include Civil Code Section 1363 (association to manage common interest development), Code of Civil Procedure Section 369 (fiduciaries), and Probate Code Sections 550 - 555 (insured claims)." (Litigation Involving Decedents, supra , 22 Cal. Law Revision Com. Rep., supra , at p. 922.)
The foregoing versions of section 367 and the comments of the Law Revision Commission demonstrate that section 369 is an exception to the real *1221 party in interest requirement set forth in section 367. This conclusion about the relationship of the statutes is significant in this case because Brown contends he is a real party in interest who satisfied the real party in interest requirement of section 367 because of the interests he acquired through the assignments and grant deeds. (See Civ. Code, §§ 953 [definition of "thing in action"], 954 [thing in action may be transferred]; Wikstrom v. Yolo Fliers Club (1929) 206 Cal. 461, 464, 274 P. 959 [code sections lifted many restrictions on assignability of causes of action]; Timed Out , LLC v. Youabian , Inc. (2014) 229 Cal.App.4th 1001, 1009, 177 Cal.Rptr.3d 773 [cause of action arising out of a wrong involving injury to real property may be assigned].)
C. Determination of Meaning
1. Ambiguity
Having set forth the actual words used in the current and earlier versions of sections 367 and 369, we turn to the threshold legal question of whether the words used in section 369 are ambiguous-that is, reasonably susceptible to more than one interpretation. ( California Public Records , Inc. v. County of Stanislaus (2016) 246 Cal.App.4th 1432, 1454, 201 Cal.Rptr.3d 745 ; Merced Irrigation District v. Superior Court (2017) 7 Cal.App.5th 916, 925, 213 Cal.Rptr.3d 306 [whether statutory language is ambiguous is a question of law].)
We conclude the phrase "the persons for whose benefit the action is prosecuted" is susceptible to more than one interpretation and, therefore, is ambiguous. ( § 369, subd. (a).) This statutory text does not explicitly address the degree or proportion of the benefit that would be obtained by "the persons for whose benefit the action is prosecuted." Similarly the reference to a contract "made for the benefit of another" (id. , subd. (a)(3)) does not address the degree or proportion of the benefit that would be realized by the person for whose benefit the contract was made.
We conclude it is reasonable to interpret the phrase "the persons for whose benefit the action is prosecuted" as being limited to the persons who will obtain all of the benefits for the action. Under this interpretation, the phrase would refer to "the persons for whose sole benefit the action is prosecuted." Alternatively, it is reasonable to interpret the phrase more expansively so that it covers persons who would obtain some of the benefits of a successful action. Under this interpretation, the phrase would refer to "the persons for whose benefit, in whole or in part , the action is prosecuted" and the reference to a contract "made for the benefit of another" would encompass a contract "made for the partial benefit of another." Based on these two possible interpretations, we conclude the language in section 369, subdivision (a) is ambiguous.
*698 *1222 2. Resolving the Ambiguity
When a statute's text is ambiguous, courts presume the Legislature intended reasonable results consistent with the apparent purpose of the legislation. ( Imperial Merchant Services , Inc. v. Hunt (2009) 47 Cal.4th 381, 388, 97 Cal.Rptr.3d 464, 212 P.3d 736.) Stated another way, our role is "to identify the interpretation that best effectuates the legislative intent." ( Beal Bank , SSB v. Arter & Hadden , LLP (2007) 42 Cal.4th 503, 508, 66 Cal.Rptr.3d 52, 167 P.3d 666.)
The text in the various versions of sections 367 and 369 and the California Law Revision Commission's 1992 comment to section 367 demonstrate that the purpose of section 369 is to create an exception to the real party in interest requirement contained in section 367 so that fiduciaries are not required to join the beneficiaries for whose benefit they are acting in the litigation. We have located no materials identifying a different purpose. For instance, Brown has cited no legislative history or other sources showing a purpose underlying section 369 was to address situations created by partial assignments and allow a partial assignee to pursue litigation on behalf of one or more partial assignors without joining the assignors. Therefore, we conclude the interpretation that best effectuates the legislative purpose requires the phrase "the persons for whose benefit the action is prosecuted" to be interpreted to mean "the persons for whose sole benefit the action is prosecuted." Under this interpretation, when the interests in the outcome of the action are divided among the person prosecuting the action and the others, the plaintiff is not an adequate stand-in for the absent persons, and the usual rules of standing and joinder would apply. Restated in the language of subdivision (a)(3) of section 369, when the contract or contracts in question do not create a fiduciary relationship in which the plaintiff is acting solely for the benefit of another person or group of persons, the plaintiff is not "a person with whom ... a contract is made for the [sole] benefit of another." Instead, the contracts were "made for the benefit of" both the plaintiff and the others.
In summary, section 369, subdivision (a)(3) does not apply to assignments where the plaintiff obtains a partial interest in the outcome of the litigation and the assignors retain a partial interest in the outcome. Consequently, that provision does not authorize Brown to proceed with this litigation without joining the borrower-assignors and does not provide a basis for overturning the trial court's joinder order.
IV. Other Issues*** *1223 DISPOSITION
The petition for writ of mandate is denied. This court's July 1, 2016, stay of the superior court's June 3, 2016, order is lifted.
The parties appearing in this writ proceeding shall bear their own costs. ( Cal. Rules of Court, rule 8.493(a)(1)(B).)
WE CONCUR:
GOMES, Acting P.J.
SMITH, J.
Certified for Partial Publication.*

Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, II, and IV of Discussion.

All unlabeled statutory references are to the Code of Civil Procedure.

This opinion uses the term "borrower-assignors" to refer to the individuals, married couples, and trustees of living trusts whose claims and property interests were assigned to Life Savers and then assigned to Brown.

On June 17, 2016, Brown filed a third amended complaint in response to the trial court's order sustaining a demurrer to certain causes of action with leave to amend within 10 days.

Defendants assert the parcels identified as securing the 1,117 loans are located in 32 counties and less than 2 percent of the properties (i.e., 22) are located in Fresno County.

On January 3, 2014, Lender Processing Services, Inc., was converted from a corporation to a Delaware limited liability company named Black Knight InfoServ, LLC. Counsel for this entity submitted a certificate from the Delaware Secretary of State indicating that Black Knight InfoServ, LLC, was duly formed under the laws of Delaware and, as of October 26, 2017, was in good standing and had a legal existence so far as the records of the Secretary of State's office showed.

Subdivision (a) of Penal Code section 496 makes it a crime to buy or receive any property "that has been obtained in any manner constituting theft" while knowing the property has been so obtained. Any person injured by this crime "may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." (Pen. Code, § 496, subd. (c).) Brown has alleged actual damages of $800 million and requested treble damages of $2.4 billion under this statute.

More than two years before the motion was filed, Lender Processing Services, Inc., was converted to Black Knight InfoServ, LLC, a Delaware limited liability company, and, thus, the corporation no longer had a legal existence. Consequently, the motion to compel joinder, as well as the return and the certificate of interested entities or persons submitted to this court, should have been filed by Black Knight InfoServ, LLC, as successor entity to Lender Processing Services, Inc. On remand, counsel for the successor entity shall accurately identify the entity it is representing in all papers filed in the superior court. (See Bus. & Prof. Code, § 6068, subd. (d).) The successor entity so identified must actually exist.

Brown has not repeated this failure in the present action. His complaint contained detailed descriptions of the assignments and attached 25 examples of assignments and 25 examples of grant deeds conveying a 5 percent ownership interest in the real property securing the loans.

See footnote *, ante .

In 1976, the Legislature revised section 367 to include a cross-reference to the newly enacted section 374, a provision specifically granting standing to property owners' associations so they could sue for injuries to commonly owned areas without joining the individual owners of the condominiums or similar projects. (Leg. Counsel's Dig., Sen. Bill No. 1542, 4 Stats. 1976 (1975-1976 Reg. Sess.) Summary Dig., pp. 149-150; see Arnolds Management Corp. v. Eischen (1984) 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15.)

See footnote *, ante .