Filed 6/9/23  Brown v. Bank of America, N.A. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LARRY BROWN, | F080566 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. Nos. 15CECG01171 & 16CECG02223) |
| BANK OF AMERICA, N.A., et al., | |
| Defendants and Respondents. | **OPINION** |

APPEAL from a judgment of dismissal and orders of the Superior Court of Fresno County.  Kimberly Gaab, Judge.

Brian J. Jacobs for Plaintiff and Appellant.

Snell & Winter and Douglas A. Thompson for Defendants and Respondents, Bank of America, N.A., ReconTrust Company, N.A., and Countrywide Financial Corporation.

Bryan Cave Leighton Paisner, Amtoj Randhawa and Linda C. Hsu for Defendants and Respondents, MERSCORP Holdings, Inc., and Mortgage Electronic Registration System, Inc.

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Lejf E. Knutson and Alexander R. Morrow for Defendants and Respondents, DOCX, LLC and Black Knight InfoServ, LLC.

Morgan, Lewis & Bockius, Joseph Duffy and Joseph Bias for Defendants and Respondents, JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

Houser, Emilie K. Edling and Robert W. Norman, Jr., for Defendants and Respondents, Ocwen Loan Servicing, LLC and The Bank of New York.

Duane Morris, Deanna J. Lucci and Ayad Matthews for Defendant and Respondent, U.S. Bank, N.A.

Severson & Werson and Jan T. Chilton for Defendant and Respondent, Wells Fargo Bank, N.A.

-ooOoo-

Plaintiff Larry Brown obtained assignments from 1,117 borrowers transferring (1) a 100 percent interest in causes of action relating to their home loans and (2) a 5 percent ownership interest in the real estate securing the home loans. Brown then pursued those causes of action by filing a lawsuit against various entities involved in originating, servicing, or enforcing those loans in Fresno County Superior Court case No. 15CEG01171 (the 15 Action).

Some of the defendants brought a motion to compel joinder of the borrowers, contending they were both necessary and indispensable parties to the litigation under California's compulsory joinder statute, Code of Civil Procedure section 389.[1] The trial court ordered joinder of the borrowers and Brown filed a petition for writ of mandate challenging the order. We denied the petition, concluding in a partially published opinion that the borrowers were necessary parties under section 389, subdivision (a)(2)(i). (*Brown v. Superior Court* (2018) 19 Cal.App.5th 1208, 1210–1211 (*Brown*); see *id.* (Jan. 30, 2018, F073964) [nonpub. opn.].)[2]

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

[2]     Our earlier opinion is contained in the clerk's transcript in the present appeal. The nonpublished portions of the *Brown* opinion fall within the exception to California Rules

2.

Meanwhile, Brown obtained assignments from approximately 20,000 additional borrowers, who assigned the same interests to Brown as the borrowers in the 15 Action. Brown then filed a lawsuit against the same entities and alleging the same causes of action as the 15 Action in Fresno County Superior Court case No. 16CECG02223 (the 16 Action).

After the remittitur issued in the *Brown* writ of mandate case, Brown amended the complaints in both actions to try to eliminate any basis for finding the borrowers were necessary parties. After the trial court consolidated the two actions for pretrial purposes, some of the defendants filed a motion to dismiss both actions for Brown's failure to join necessary and indispensable parties pursuant to section 389. The trial court granted the motion and entered judgment dismissing both actions. Brown brought a motion for new trial, which the trial court denied.

On appeal, Brown raises various contentions of trial court error with respect to: (1) a September 2018 order granting a motion for joinder of the borrowers in the 16 Action; (2) an April 2019 order denying his motion to amend the complaints in both actions; (3) an August 2019 judgment of dismissal granting a motion to dismiss; and (4) a December 2019 order denying his new trial motion. Finding no merit to Brown's contentions, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

During and following Brown's pursuit of two similar failed federal lawsuits,[3] Brown obtained agreements purporting to assign certain claims and transfer of fractional interests in real property from thousands of borrowers. The borrowers were members of

___

of Court, rule 8.1115(b)(1). When we cite to unpublished portions of the opinion, we cite to the slip opinion.

[3] See *Brown*, *supra*, 19 Cal.App.5th at p. 1216 [describing history of related federal lawsuits]; *Brown v. Bank of America, N.A.* (C.D. Cal., Feb. 24, 2014, No. CV 12-02009 TJH) [2014 U.S. Dist. Lexis 197478; 2014 WL 12707378]; *Brown v. Bank of America, N.A.* (9th Cir. 2016) 660 Fed.Appx. 506, 509.

Life Savers Concepts Association, Inc. (Life Savers), a North Carolina corporation authorized to do business in California, who, as current and former homeowners, banded together to better seek relief from improper actions relating to their homes loans and the real property securing their loans. (*Brown*, *supra*, 19 Cal.App.5th at p. 1212.)

The members transferred their claims against the entities that made, held, or serviced their home loans to Life Savers by executing documents labeled "AGREEMENT FOR ASSIGNMENT AND TRANSFER OF RIGHTS OF LEGAL CLAIM."[4] When the members executed these agreements, most also executed grant deeds that transferred a 5 percent ownership interest in the real property securing their loans to Life Savers.[5] (*Brown*, *supra*, 19 Cal.App.5th at p. 1212.)

On March 29, 2013, Life Savers and Brown entered into an assignment agreement, with two counterparts signed by Life Savers' officers, which were designed to transfer to Brown all rights that had been assigned to Life Savers by the homeowners and former homeowners. On August 13, 2014, and December 10, 2015, Life Savers executed second and third assignments that transferred to Brown all the rights to pursue claims that had been assigned to Life Savers. Brown alleged in the 16 Action that Life Savers executed a fourth assignment on July 8, 2016.

Contemporaneous with the second assignment of claims to Brown, Life Savers executed a document that assigned "all of its interest in the Grant Deeds assigned it by all LifeSavers members" to Brown. Similarly, when Life Savers executed the third and fourth assignments to Brown, it also executed assignment agreements that quitclaimed to Brown all of Life Savers' right, title, and interest in the real property conveyed to Life

---

[4] Twenty-five example agreements were attached to the complaint in each action.

[5] Because the relevant grant deeds total approximately 1,000 pages in the 15 Action and 20,000 pages in the 16 Action, Brown attached 25 of the grant deeds as examples to his pleading in each action. The grant deeds state the member grants Life Savers "a 5% ownership interest in the following described real property …."

4.

Savers by the grant deeds from its members. Based on these assignments, Brown claims he holds a 5 percent ownership interest in each of the properties that secured the members' home loans.[6]

### The 15 Action and the First Joinder Order

In April 2015, Brown filed a civil action in Fresno County Superior Court to pursue the claims the borrower-assignors had transferred to him, which we have denominated the 15 Action. (*Brown*, *supra*, 19 Cal.App.5th at p. 1213.) The second amended complaint alleged Brown brought the lawsuit solely in the capacity as the assignee of the borrower-assignors' claims.[7] (*Id*. at p. 1214.) An attached exhibit listed 1,117 borrower-assignors and identified the real property securing their loans by street address and assessor's parcel number. The complaint organized the borrower-assignors into three categories: (1) those against whom no foreclosure proceeding had been initiated when the complaint was filed; (2) those where a notice of default and election to sell under deed of trust had been recorded; and (3) those whose property had been sold in foreclosure. (*Id*. at pp. 1213–1214.)

The second amended complaint alleged a variety of actions "taken by defendants in connection with the loans and real property security were unlawful or invalid. Brown

---

[6] This opinion uses the term "borrower-assignors" to refer to the individuals, married couples, and trustees of living trusts whose claims and property interests were assigned to Life Savers and then assigned to Brown.

[7] The named defendants were: (1) Bank of America, N.A.; (2) Countrywide Financial Corporation; (3) BAC Home Loans Servicing, LP; (4) ReconTrust, N.A.; (5) Mortgage Electronic Registration Systems, Inc. (MERS); (6) MERSCORP Holdings, Inc.; (7) The Bank of New York Mellon; (8) U.S. Bank, N.A.; (9) Aurora Bank FSB, a federal savings bank; (10) JP Morgan Chase & Co.; (11) JPMorgan Chase Bank, National Association; (12) Ocwen Loan Servicing, LLC; (13) Wells Fargo Bank, N.A.; (14) DOCX, LLC, a Georgia limited liability company; and (15) Lender Processing Services, Inc., a Delaware corporation. (*Brown*, *supra*, 19 Cal.App.5th at p. 1214.) Lender Processing Services, Inc., was converted from a corporation to a Delaware limited liability company named Black Knight InfoServ, LLC in January 2014. (*Id*. at p. 1214, fn. 5.)

alleged transfers of the promissory notes and deeds of trust to the trustee of a real estate mortgage investment conduit (REMIC) violated the terms of the REMIC's pooling and servicing agreement and federal tax laws specifying when REMIC's qualify as pass-through entities rather than taxable entities. In particular, Brown alleged transfers were attempted more than three months after the closing date of the REMIC. He also alleged the trustee of the REMIC could not enforce the debt without physical possession of the promissory note. Other alleged wrongs included (1) 'forging and backdating of documents, often called "robosigning" '; (2) 'foreclosures prosecuted by parties without rights to do so'; (3) a general failure to keep adequate records; and (4) false notarizations of documents relating to assignments of the loans or relating to foreclosures under the deeds of trust." (*Brown*, *supra*, 19 Cal.App.5th at p. 1214.)

"The prayer for relief in the complaint requested general damages exceeding $800 million, special damages in an amount to be proven at trial, an accounting between the borrower-assignors and defendants, and the recovery of the amounts the accounting shows are due to the borrower-assignors. It also requested reformation of each deed of trust 'otherwise designating MERS as the nominee of the named beneficiary, to embody the true agreement of the parties, modified to become mortgages with the current holder of the related Promissory Note as mortgagee.' Under the causes of action for declaratory relief and cancellation of instruments, the complaint requested the deeds of trusts, the notices of default and documents purportedly transferring the secured loans to the trustee of a securitized trust (i.e., a REMIC) be decreed void. The request for injunctive relief sought to prevent all sales or attempted sales of any of the properties securing the loans pursuant to the powers of sale contained in the deeds of trust." (*Brown*, *supra*, 19 Cal.App.5th at p. 1215.)

DOCX, LLC (DOCX) and Lender Processing Services, Inc., moved for orders compelling joinder of the borrower-assignors as necessary parties and dismissing the

6.

action for failing to join indispensable parties.[8] (*Brown, supra*, 19 Cal.App.5th at p. 1215.) Following a hearing on the motion the trial court issued a written order in June 2016 "granting the motion for joinder as to the borrower-assignors who assigned a partial ownership interest in the real property that secured their loan," and directing the parties to meet and confer on a process to identify the parties subject to joinder and the procedure by which to join those parties. (*Brown, supra*, 19 Cal.App.5th at pp. 1215–1216.)

Brown filed a petition for writ of mandate with this court challenging the order compelling joinder of the borrower-assignors. (*Brown, supra*, 19 Cal.App.5th at p. 1216.) We stayed the trial court's meet and confer order and issued an order to show cause on July 22, 2016. (*Ibid.*)

### *The 16 Action*

Meanwhile, Brown filed a second action in Fresno County Superior Court on July 11, 2016, which we have denominated the 16 Action. Brown filed a first amended complaint in December 2016, against the same 15 defendants as the 15 Action.[9] Brown alleged he brought the 16 Action as assignee of claims and the grantee of rights in real property associated with approximately 20,000 California residents. Brown concedes the claims in the 16 Action are substantially identical to those in the 15 Action, though they involve a different set of borrower-assignors.

DOCX filed a motion to compel joinder of the borrower-assignors as necessary parties and dismissing the 16 Action for failing to join indispensable parties. After the motion was fully briefed, the parties stipulated to a stay of the proceedings pending resolution of the writ petition.

---

[8]     Defendants Aurora Commercial Corp., as successor entity to Aurora Bank FSB, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and U.S. Bank, National Association joined in the motion. (*Brown, supra*, 19 Cal.App.5th at p. 1215.)

[9]     Rather than sue Aurora Bank FSB, Brown sued Aurora Commercial Corp., as successor entity to Aurora Bank FSB.

7.

*The Decision on the Writ Petition*

On January 30, 2018, we issued the *Brown* opinion, in which we denied the petition for writ of mandate and lifted the stay. (*Brown*, *supra*, 19 Cal.App.5th at pp. 1208, 1211.) In the unpublished portion of the opinion, we held that joinder of the borrower-assignors was warranted under section 389, subdivision (a)(2)(i). (*Brown*, *supra*, 19 Cal.App.5th at p. 1211; see *id.*, F073964, pp. 2, 15–30.) We noted the borrowers could lose the protection from personal liability provided by California's antideficiency statutes if, as sought in the complaint, the deeds of trust securing the loans were declared void and unenforceable, thereby rendering the loans unsecured. We concluded the conditions for joinder under section 389, subdivision (a)(2)(i) were present because "[t]he borrowers' absence from this litigation may impair or impede their ability to protect their interest in the benefits provided by the antideficiency statutes—that is, immunity from personal liability for the loan balance or any deficiency judgment." (*Brown*, *supra*, 19 Cal.App.5th at p. 1211.)[10]

In concluding the borrower-assignors' absence from the action might impair their ability to protect their interest in being immune from liability for any loan deficiency, we rejected Brown's argument the borrower-assignors had voluntarily accepted the risks of litigation and the potential loss of protections from personal liability by authorizing and approving the lawsuit. (*Brown*, *supra*, F073964, p. 28.) We determined there was insufficient evidence to support a finding the borrower-assignors knowingly and intelligently accepted the possibility they would lose the statutory antideficiency protections, as (1) the assignments did not mention the risk, (2) there were no declarations stating the borrower-assignors knew or were informed of the risk before

---

[10]   In the published portion of the opinion, we confirmed section 369, subdivision (a)(3) did not provide a statutory exception allowing Brown to prosecute the action without joining the borrower-assignors. (*Brown*, *supra*, 19 Cal.App.5th at pp. 1211, 1217–1222.)

8.

executing the assignments, and (3) Brown did not acknowledge the risk associated with having the deeds of trust declared void in the papers filed in the trial or appellate court. (*Id.*, pp. 28–39.) We further determined "there is a conflict between (1) Brown's interest in freeing his 5 percent interest in the various parcels from the lien created by the deeds of trust and (2) the borrower-assignors' interest in maintaining immunity from personal liability for the unpaid loan balance." (*Id.*, p. 29.)

Since the application of subdivision (a)(2)(i) of section 389 to the facts presented established the existence of a statutory condition of compulsory joinder, we did not consider other statutory conditions. (*Brown*, *supra*, F073964, p. 29.) We also did not reach the issue of whether the borrower-assignors were indispensable parties for purposes of section 389, subdivision (b), or whether the borrower-assignors whose homes had been sold in foreclosure were subject to joinder due to amended allegations in Brown's third amended complaint. (*Id.*, pp. 36–37.)[11]

The remittitur issued on April 4, 2018.

### Brown's Requests for Dismissal

Attempting to avoid joinder of the borrower-assignors, Brown filed a request for dismissal in each action on the day the remittitur issued. The requests for dismissal, which were prepared using Judicial Council form CIV-110, asked the court clerk to dismiss specified paragraphs in the cause of action for cancellation of instruments that alleged the deeds of trust were void, and the term "the Deeds of Trust" in specified prayers for relief asking that the deeds of trust be declared void, in the 15 Action's third amended complaint and 16 Action's first amended complaint. The court clerk entered the dismissal as requested that day.

---

[11] At the same time the trial court granted the joinder motion, it sustained in part a demurrer to the second amended complaint filed by other defendants with leave to amend and ordered the filing of a third amended complaint, which Brown filed on June 17, 2016.

9.

*The Orders to Show Cause in the 15 Action*

An order to show cause regarding joinder was issued in the 15 Action directing Brown to appear at a May 24, 2018 hearing to provide an updated status of the case, which was continued to August 23, 2018.

On August 16, 2018, Brown filed a memorandum of points and authorities in opposition to the order to show cause. Brown asserted there was no showing joinder of the borrower-assigners was required as the court clerk "granted" his request for dismissal of those portions of the third amended complaint which sought cancellation of the deeds of trust. Brown claimed that since "the conflict so painstakingly adumbrated by the Fifth Appellate District no longer exists, no rationale is presented in the Opinion for joinder of Plaintiff's assignors."

DOCX filed a response to Brown's opposition. DOCX asserted that Brown had not complied with the joinder order and his attempted partial dismissal, the validity of which DOCX asserted was questionable, did not resolve the issues involving the validity of the deeds of trust since the third amended complaint still contained allegations seeking to void the deeds of trust and the assignments of them, and continued to assert equitable causes of action for reformation, injunctive relief, cancellation of instruments, and declaratory relief which alleged the deeds of trust were void. DOCX asked the trial court to order Brown to comply with the joinder order and Court of Appeal decision and join his assignors as party plaintiffs.

The order to show cause hearing was continued to October 24, 2018.

*The Motion for Joinder in the 16 Action*

Meanwhile, on July 23, 2018, DOCX filed a renewed motion in the 16 Action for joinder of the borrower-assignors as necessary parties and dismissal of the action for

failing to join indispensable parties.[12]  Brown opposed the motion, arguing, among other things, it was meritless since he filed a request for dismissal of those portions of the first amended complaint that sought cancellation of the deeds of trust, which the court clerk granted on April 4, 2018.

DOCX and Black Knight filed a joint reply to Brown's opposition.  With respect to Brown's assertion the request for dismissal eliminated the need to join the borrower-assignors, DOCX and Black Knight argued that while the validity of the dismissal of only portions of the first amended complaint was "highly questionable," even if it were procedurally proper, the purportedly dismissed allegations did not eliminate the need to join the borrower-assignors.

On August 29, 2018, the 16 Action was assigned to Judge Rosemary McGuire for all purposes.  Two days later, Judge McGuire issued a tentative ruling granting the motion for joinder of the borrower-assignors as necessary parties.  In response, Brown filed a peremptory challenge to Judge McGuire, which resulted in reassignment of the 16 Action to Judge Kimberly A. Gaab on September 5, 2018.

After a September 12, 2018 hearing on the joinder motion, Judge Gaab entered an order on September 18, 2018 (the September 18 order):  (1) striking, on the court's own motion, the partial dismissal entered on April 4, 2018, as the dismissal was entered in error and there is no legal authority for dismissing individual allegations of a complaint; (2) granting the motion for joinder of borrower-assignors as necessary parties; and (3) denying without prejudice the motion to dismiss the action for failing to join indispensable parties.  The trial court directed the parties to meet and confer within the next 20 court days to agree on a method for including the borrower-assignors in the action and file a stipulated agreement for a procedure to join them by October 17, 2018.

---

[12]     Black Knight InfoServ, LLC, previously known as Lender Processing Services, Inc. (Black Knight), JP Morgan Chase and Co., and JPMorgan Chase Bank N.A. joined in DOCX's motion.

The parties exchanged emails as part of the meet and confer process concerning effectuating joinder of the borrower-assignors, but a consensus was not reached. On October 17, 2018, DOCX filed a request for a status conference for the court to determine the procedure and time frame for joining the borrower-assignors, which Black Knight joined in. Brown filed a response to DOCX's request.

***The Motions to Amend in Both Actions***

In September 2018, Brown filed motions for leave to amend his complaints in both actions, asserting the proposed amendments were "intended to confirm the dismissal of claims relating to cancellation of deeds of trust and to supplement existing causes of action based on facts already pleaded." He proposed filing a second amended complaint in the 16 Action and a fourth amended complaint in the 15 Action.

DOCX opposed both motions, arguing, among other things, Brown should be required to join the borrower-assignors as parties to the action before seeking leave to amend and the proposed amendments violated the sham pleading rule. DOCX asserted the action should be abated or stayed, and the motion for leave to amend denied or deferred pending joinder of the borrower-assignors. Other defendants also filed oppositions or joinders in others' briefs.[13] Brown filed a reply to the oppositions in each action.

On February 6, 2019, the motions to amend were heard in conjunction with pending status conference matters. During the hearing, Brown's counsel told the trial court that he understood 90 percent of the borrower-assignors had been foreclosed upon and asked for leave to amend the exhibits to reflect this.

---

**13** The following defendants also filed oppositions to the motion for leave to amend or joined in other defendant's oppositions: (1) Black Knight; (2) Bank of America, ReconTrust, U.S. Bank, Aurora FSB, JPMorgan Chase & Co., JPMorgan Chase Bank, MERS, and MERSCORP Holdings; (3) Wells Fargo; and (4) Ocwen.

The trial court issued a written ruling on February 11, 2019, in which, on its own motion, it set orders to show cause, with a hearing date of April 10, 2019, on the following issues: (1) why the 15 Action and 16 Action should not be consolidated for pretrial purposes; (2) why each case should not be deemed a complex matter pursuant to California Rules of Court, rule 3.400; and (3) why each case should not be dismissed for failure to join necessary parties. The trial court continued the motions to file amended complaints to April 10, 2019, and requested the parties to file supplemental briefs detailing what impact the proposed amendments would have on the necessary party analysis of section 389, subdivision (a), if the motions to amend were granted.

The parties filed supplemental briefing pursuant to the trial court's order. Two days after the April 10, 2019 hearing, the trial court issued a written order consolidating the 15 Action and 16 Action for pretrial purposes, with the 15 Action designated as the lead case, and deeming the consolidated cases complex (the April 12 order). The trial court denied Brown's motions to amend the respective complaints as proposed because the borrower-assignors were indispensable parties thereto. The trial court, however, allowed Brown "to file amended complaints that (1) dismiss any and all claims or remedies that in any way impact the validity of the underlying deeds of trust and, instead, seek only monetary damages and/or limited equitable relief addressing future behavior, and/or (2) use another procedural vehicle to bring these claims." The trial court gave Brown until May 10, 2019, to file the amended complaints. If no pleadings were filed, the trial court stated it would dismiss the cases pursuant to section 389. The trial court set a complex case status conference for May 29, 2019, and continued the order to show cause regarding dismissal for failure to join indispensable parties to that date.

On May 10, 2019, Brown filed a verified fourth amended complaint in the 15 Action and a verified second amended complaint in the 16 Action (collectively, the amended complaints). DOCX and Black Knight subsequently filed a status conference statement asking the trial court to set a briefing schedule to address whether the newly

13.

amended complaints "have resolved the outstanding issues raised in the Court's outstanding joinder orders." Brown filed a response to DOCX and Black Knight's status conference statement in which he asserted such briefing was unnecessary because he followed the trial court's April 12 order "to the letter," as the amended complaints sought only monetary relief and an accounting.

At the May 29, 2019 status conference, the trial court stated it agreed with the request to set a briefing schedule to address the "extent the amended complaints have resolved the outstanding joinder issues." The trial court issued a minute order advising the issue of joinder would be heard on August 14, 2019, and directing the parties to follow standard law and motion briefing (the May 29 order).

***The Motion to Dismiss***

On August 2, 2019, DOCX and Black Knight filed a motion to dismiss both actions for failure to join indispensable parties. They argued: (1) if Brown continued to prosecute his monetary claims to judgment, he could effectively extinguish any related equitable claims the borrower-assignors might have with respect to the written instruments which would procedurally bar them from filing separate actions to prosecute their own separate, related claims; (2) the amended complaints necessarily touched on the substance of the deeds of trust and prejudice would result to the borrower-assignors with respect to their protections under the antideficiency statutes; and (3) without joinder, defendants continued to face substantial prejudice in the form of derivative, duplicative litigation and the concomitant danger of inconsistent obligations toward Brown and the borrower-assignors.

Brown filed oppositions to the motion to dismiss in each case on August 14 and 15, 2019. Brown objected to the filing of one motion to dismiss both actions, claiming separate motions and filing fees were required because the two actions were consolidated only for pretrial purposes. Brown further asserted the trial court was estopped from dismissing the consolidated cases for any reason other than Brown's noncompliance with

14.

the April 12, 2019 order. Stating the motion to dismiss mischaracterized the amended complaints, Brown argued the borrower-assignors made "absolute" assignments of their claims, Brown could not add any equitable claims without the court's permission, the borrower-assignors relinquished the right to file their own actions, and if the amended complaints were dismissed, the applicable statutes of limitation could bar the borrower-assignors' claims.

Following an August 27, 2019 hearing, the trial court issued a written order dismissing both actions without prejudice for failure to join indispensable parties (the August 30 order). The trial court rejected Brown's arguments that it could not consider the motion to dismiss. The trial court noted the borrower-assignors remained necessary parties under the amended complaints, which left whether they were indispensable parties and their joinder was feasible. After considering the factors used to determine whether an absent party is indispensable, the trial court found the borrower-assignors in both actions were necessary and indispensable parties under section 389, and joinder of such parties would not be feasible. Therefore, the trial court dismissed both cases.

The judgment of dismissal of both actions was entered on October 2, 2019.

### The New Trial Motions

Brown filed a notice of intent to move for new trial in both actions on October 21, 2019. After briefing, the new trial motions were heard on December 9, 2019, and an order denying the motions was entered that day.

### DISCUSSION

**I.     Necessary and Indispensable Parties**

The primary issue in this case is whether, under the various permutations of Brown's complaints in both actions, the borrower-assignors are necessary and indispensable parties to those actions.

A necessary party is one "(1) in [whose] absence complete relief cannot be accorded among those already parties or (2) [who] claims an interest relating to the

15.

subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." (§ 389, subd. (a); *Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 301 [a person meeting the requirements of § 389, subd. (a) " 'is often referred to as a "necessary party" ' "].)

A person who is a necessary party is "regarded as indispensable" if the court determines "in equity and good conscience" the action must be dismissed in the person's absence by considering factors that include: "(1) [the] extent [to which] a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder." (§ 389, subd. (b).)

"A determination that the persons are necessary parties is the predicate for the determination whether they are indispensable parties." (*Deltakeeper v. Oakdale Irrigation Dist.* (2001) 94 Cal.App.4th 1092, 1100.) "Whether a party is necessary and/or indispensable is a matter of trial court discretion in which the court weighs 'factors of practical realities and other considerations.' " (*Hayes v. State Dept. of Developmental Services* (2006) 138 Cal.App.4th 1523, 1529.) "We review the trial court's ruling for abuse of discretion." (*Ibid.*; accord, *Morrical v. Rogers* (2013) 220 Cal.App.4th 438, 461.)

## II.     The September 18, 2018 Order

In September 2018, the trial court considered several matters in the 16 Action, including DOCX's motion for orders:  (1) compelling joinder of the borrower-assignors

16.

as necessary parties, and (2) dismissing the action for failing to join indispensable parties. In opposing the motion, Brown argued it was meritless in part because he dismissed the allegations in the first amended complaint that made the borrower-assignors necessary parties when the court clerk entered his request for dismissal in April 2018. Over Brown's objection on due process grounds, the trial court struck the request for dismissal sua sponte, explaining it did so because the clerk's office erred in entering it as there is no legal authority for dismissing a complaint's individual allegations.

In granting the motion for joinder, the trial court used the analysis we employed in the *Brown* opinion, namely, that because Brown sought reformation and cancellation of the deeds of trust in the then operative first amended complaint, if Brown were successful in his lawsuit, the deeds of trust would be declared a nullity and the creditors may be allowed to sue the borrower-assignors personally for the amount of the unsecured debts. The trial court determined: "As a practical matter, this could impair the assignors' ability to protect their interests in being immune from liability for a deficiency." The trial court therefore concluded there was a substantial risk the borrower-assignors' rights would be impaired and a possibility they would be liable for double, multiple, or inconsistent obligations, which rendered them necessary parties under section 389, subdivisions (a)(2)(i) & (ii).

The trial court determined this analysis did not change even if Brown's purported partial dismissal was valid, as the dismissal left "intact [Brown]'s causes of action for cancellation, declaratory relief (which seeks to declare void the deeds of trust), reformation, injunctive relief, and the various other claims that would impact the assignors' entitlement to the protection of the anti-deficiency statutes. In short, the purported partial dismissal does nothing to address the issue that, by declaring or otherwise rendering the deeds of trust null and void, the assignors could be subject to impairment of their immunities under the anti-deficiency statutes or otherwise render them potentially liable for double or inconsistent allegations."

In challenging the trial court's September 18, 2018 order on appeal, Brown argues the trial court erred in striking the April 2018 request for dismissal because: (1) he was not given notice the court intended to strike it and had no opportunity to be heard on the issue; and (2) the request for dismissal effectively dismissed the fourth and fifth causes of action " 'to the extent they seek a declaration of voidness, or the cancellation, of the Deeds of Trust,' " and therefore complied with section 581. Brown further contends the trial court erred in finding joinder of the borrower-assignors was required because the request for dismissal eliminated any basis for finding they were necessary parties.

We need not decide whether the trial court erred in striking the request for dismissal because, even if it did, there is no resulting prejudice. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [error must be prejudicial to warrant reversal of judgment]; *Santina v. General Petroleum Corp.* (1940) 41 Cal.App.2d 74, 76–77 [it is appellant's burden to show complained-of error is substantial and affected the result].) In determining whether the borrower-assignors were necessary parties, the trial court considered the effect of the purported dismissal on that analysis and concluded it did not address the issue that the borrower-assignors' immunities under the antideficiency statutes could be impaired or they could be rendered potentially liable for double or inconsistent obligations.

Brown contends that decision is erroneous because the loans would remain secured if relief were granted under the reformation or injunctive relief causes of action, and, at most, the properties would be subject to the same liens if he prevails. Brown claims the partial dismissal removed any possibility the deeds of trust would be declared void or cancelled, and no other causes of action would result in the loss of the borrower-assignors' immunity from personal liability.

Brown, however, ignores that the first amended complaint as amended by the partial dismissal still sought relief in the form of invalidating the borrower-assignors' deeds of trusts and the assignments of those deeds of trust as void. It also continued to

18.

assert claims for: (1) injunctive relief to prevent the sale of properties under the power of sale in the deeds of trust in which defendants are alleged to have no interest; (2) reformation of the borrower-assignors' deeds of trust into mortgages, which would require involvement of the borrower-assignors as trustors under those deeds of trust;[14] (3) declaratory relief to determine rights and interests of the lenders and borrower-assignors in their promissory notes and deeds of trust, which requires the involvement of the borrower-assignors since Brown is not a party to the loans or deeds of trust;[15] and (4) cancellation of instruments seeking to cancel notices of default and assignments of deeds of trust, which requires joinder of the borrower-assignors as parties to potential foreclosures on their properties.

Thus, the trial court did not abuse its discretion in finding that even considering the partial dismissal, the borrower-assignors remained necessary parties under the first amended complaint, as they either could be subject to impairment of their immunities under the antideficiency statutes or potentially liable for double or inconsistent obligations.

## III.    The Motions to Amend

In September 2018, Brown filed motions for leave to file a proposed fourth amended complaint in the 15 Action and a proposed second amended complaint in the 16 Action. The proposed amendments deleted the paragraphs under the cancellation of instruments claims alleging the deeds of trust were void and allegations in the prayer for

---

[14]    Moreover, unless the mortgages contain a power of sale, the borrower-assignors could lose immunity from personal liability for a deficiency judgment. (4 Witkin, Summary of Cal. Law (11th ed., May 2023) Security Transactions in Real Property, ch. VIII, § 5 [unless mortgage contains a power of sale, mortgagee's only remedy is judicial foreclosure and a deficiency judgment, if proper, may be entered].)

[15]    When a third party challenges the validity of an agreement, the contracting parties are generally considered necessary and indispensable parties. (*Martin v. City of Corning* (1972) 25 Cal.App.3d 165, 169–170; *Southern California Title Clearing Co. v. Laws* (1969) 2 Cal.App.3d 586, 589.)

relief in that claim and the declaratory relief claim that the deeds of trust were void, which Brown purported to dismiss via the requests for dismissal filed in April 2018.

In its April 12 order, the trial court denied the motions to amend as under the proposed amendments the borrower-assignors were necessary and indispensable parties. With respect to the borrower-assignors being necessary parties, the trial court noted the proposed amended pleadings contained claims for reformation of the deeds of trust, cancellation of instruments, and injunctive and declaratory relief, including references to finding the underlying deeds of trust void for fraud. The trial court explained that "[s]ucceeding on such claims would, presumably, be binding on the assignors, yet still potentially leave them open to additional liability under the anti-deficiency statutes, since there would necessarily be a finding voiding the deeds of trust." The trial court reasoned that since the claims seek an assessment of the validity of the deeds of trust, under our opinion in *Brown*, joinder of the assignors as necessary parties was required.

Brown contends on appeal the trial court erred in finding the borrower-assignors were necessary parties under the proposed amended complaints. While he takes issue with the trial court's reasoning, arguing its analysis failed to support the conclusion it reached, he cites no legal authority to support his contention of error. (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948 [argument is forfeited when a brief failed to cite applicable legal authority to support it].) Moreover, this court does not review a trial court's reasoning; rather, we review the results of the trial court's reasoning. (*Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 692, fn. 13; *Luther Burbank Savings & Loan Assn. v. Community Construction, Inc.* (1998) 64 Cal.App.4th 652, 660.)

In any event, as we explained, *ante*, when discussing the lack of prejudice from striking the request for dismissal in the 16 Action, the trial court did not err in finding the borrower-assignors were necessary parties under the amendments proposed by the

20.

request for dismissal. This analysis applies equally to the proposed amended complaints in both actions, which mirror the requests for dismissal.

For all these reasons, Brown has not met his burden of showing the trial court erred in denying his motions to amend the complaints in each action. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [an order challenged on appeal is presumed correct and it is the appellant's burden to affirmatively show the trial court erred].)

## IV. The Estoppel Claim

In its April 12 order, the trial court stated it would allow Brown to file amended complaints that "(1) dismiss any and all claims or remedies that in any way impact the validity of the underlying deeds of trust and, instead, seek only monetary damages and/or limited equitable relief addressing future behavior, and/or (2) use another procedural vehicle to bring these claims." The trial court explained it was granting Brown leave to file an amended complaint in each action to avoid the risk of various assignors losing any potential claims against defendants. The trial court stated Brown "must seek relief that is only monetary in nature or otherwise does not touch on the substance of the underlying deeds of trust," and noted Brown may "wish to consider other procedural vehicles, such as a class action lawsuit, to pursue the claims."

Brown filed the amended complaints as ordered, which deleted causes of action for reformation, injunctive and declaratory relief, cancellation of instruments, and injunctive relief for violation of Civil Code section 2923.55. The remaining claims were for wrongful foreclosure, violations of Government Code section 8214 and Penal Code section 496, subdivision (a), conversion, intentional interference with contract, violation of the Homeowners Bill of Rights, and accounting. Except for the accounting claim, the prayers for relief associated with these claims all sought monetary damages.

Thereafter, DOCX and Black Knight asked the trial court to set a briefing schedule to address whether the newly amended complaints resolved the issues raised in the

court's joinder orders. The trial court granted that request at the May 29, 2019 status conference and set a hearing on the issue of joinder for August 14, 2019.

In opposing the motion to dismiss, Brown argued the trial court was estopped from dismissing the two cases for any reason other than noncompliance with the April 12 order. He asserted the April 12 order was clear that if he amended the complaints in conformity with the order, the joinder issue would be resolved, but if he failed to submit amended complaints, the actions would be summarily dismissed, and in reliance on the order's express terms, he filed the amended complaints that deleted five causes of action. Brown asserted in amending the complaints, he relied on the April 12 order, and he could not be punished for not amending it further to address the moving parties' arguments.

The trial court overruled Brown's objection, stating that while Brown eliminated the requests for direct equitable relief, that was a necessary, but not sufficient step, to defeat the motion to dismiss. The trial court noted any amendment was required to ensure the pleadings "did not 'touch on the substance of the underlying deeds of trust,' " and eliminating the equitable claims "does not foreclose an examination of the pleadings to ensure that [] the assignors are not indispensable parties."

Brown repeats his estoppel argument on appeal, contending the trial court should not have allowed further hearing on the issue of joinder. Brown asserts the trial court determined in its April 12 order that if he amended the complaints as stated in the order, the borrower-assignors would not be indispensable parties and the joinder issue would be resolved. Brown claims because he complied with the order by amending the complaints to eliminate all nonmonetary claims, the trial court was estopped from allowing further challenges on the ground of joinder of necessary and indispensable parties.

Brown, however, misapprehends the import of the April 12 order. While the trial court stated in the April 12 order that it was allowing Brown leave to file an amended complaint in each action "in order to avoid the potential risk of various assignors losing any potential claims against Defendants," nowhere does the trial court state the borrower-

22.

assignors would not be indispensable parties if Brown amended the complaints as specified in the order or that future challenges could not be made to the amended complaints on the ground that joinder of necessary and indispensable parties still was required. Although the trial court found it difficult to see how prejudice to the borrower-assignors could be avoided absent removing "all injunctive or reformatory claims" and proceeding only on claims for damages, the trial court also noted the problem was that "claims pertaining to the substance of the deeds of trust remain." Accordingly, the trial court permitted Brown to file amended complaints that dismiss all claims or remedies "that in any way impact the validity of the underlying deeds of trust" and instead seek only monetary damages or limited equitable relief addressing future behavior.

Thus, while the amended complaints sought only monetary damages, a question remained whether the amended complaints impacted the validity of the deeds of trust, which was appropriate for DOCX and Black Knight to address in their motion to dismiss. Brown argues this is not a fair reading of the trial court's April 12 order. Pointing to the trial court's explanation that he "must seek relief that is only monetary in nature or otherwise does not touch on the substance of the underlying deeds of trust," Brown asserts he had a choice between seeking relief that was either (1) only monetary *or* (2) otherwise did not touch on the substance of the deeds of trust. Brown reasons that since he chose to seek only monetary relief, he complied with the April 12 order and the trial court therefore was estopped from dismissing either action.

The fallacy in Brown's argument is his assumption the trial court determined that if he sought only monetary damages, the borrower-assignors would no longer be necessary and indispensable parties. The trial court, however, determined no such thing. Moreover, while Brown focuses on the trial court's explanation for his interpretation of the order, the trial court clearly stated at the outset of its order the amended complaints should dismiss all "*claims or remedies*" that "*in any way impact*" the validity of the deeds of trust. (Italics added.) We assess the meaning of the trial court's order de novo and, if

23.

its language is uncertain, we determine judicial intent by the totality of the circumstances, considering the order as a whole rather than in isolated phrases. (*In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1429–1430.) Considering the entirety of the April 12 order, the order required Brown to dismiss any claims or remedies that impact the validity of the deeds of trust; eliminating the requests for direct equitable relief was insufficient if such claims remained.

Therefore, Brown's equitable estoppel claim must fail. Since the April 12 order did not state the joinder issue would be resolved if Brown amended the complaints in conformity with the order, the trial court did not make a false representation of fact that would support an estoppel claim. (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1462 [a valid equitable estoppel claim requires a representation or concealment of material facts].) Accordingly, the trial court did not err in setting a hearing on the motion to dismiss or considering the motion.

## V. The Motion To Dismiss

### A. Procedural Issues

As a threshold matter, we address procedural issues Brown raises concerning the motion to dismiss. First, he contends the August 2019 motion to dismiss was a renewed motion under section 1008; therefore, DOCX and Black Knight were required to comply with the affidavit requirement of section 1008, subdivision (b).[16] Brown asserts the nature of the motion is revealed by a statement in the August 2019 motion to dismiss that it was a "renewed motion," and points to the July 2018 motion to dismiss DOCX filed in the 16 Action as the original motion.

The argument lacks merit. As the trial court explained in its September 18 order, it denied DOCX's July 2018 motion to dismiss for failure to join indispensable parties "without prejudice to the motion being brought on a more developed factual record."

---

[16] Brown raised this issue in his new trial motion, although the argument differed.

24.

The trial court noted that because there had not been an attempt to join the borrower-assignors, the record was insufficient to determine whether they could be joined as indispensable parties. A motion brought after an earlier motion that was denied without prejudice is not a renewed motion within the meaning of section 1008. (*Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th 1007, 1015 [§ 1008 inapplicable where "the trial court indicated it wanted to reconsider the fee issue when it denied the first motion *without prejudice*"].)

Brown also contends the motion to dismiss was not properly granted in the 16 Action because only one motion was filed and only one motion filing fee paid, which deprived the trial court of jurisdiction to entertain the motion in the 16 Action. The trial court rejected this argument when ruling on the motion to dismiss, explaining because the April 12 order consolidated the actions for pretrial purposes, separate motions were not required, and one motion and set of papers was sufficient, as the motion was procedural and the legal issues identical.

Under section 1048, subdivision (a), where two actions involve a common question of law or fact, the trial court has authority to order a joint hearing on any or all matters at issue in the actions. That is precisely what the trial court authorized here. Brown does not cite any authority to support his contention the trial court did not have jurisdiction to consider the motion as applicable to both actions. The sole case he cites, *Fisher v. Superior Court* (1937) 23 Cal.App.2d 528, which held the superior court lacked jurisdiction to entertain a complaint contesting a will after probate that was required to be heard in probate court, is inapplicable here. (*Id.* at pp. 534–535.)

Brown also contends he was denied due process because he was forced to defend against an unfiled motion. (*Moore v. California Minerals Products Corp.* (1953) 115 Cal.App.2d 834, 837 [party has right to notice and opportunity to be heard before judgment is rendered on point of law raised by trial court "with no warning of counsel and no opportunity given to ward off the blow"].) This is meritless, as Brown had notice

25.

that the motion to dismiss was addressed to both actions, as the motion clearly states DOCX and Black Knight were moving to dismiss both the 15 Action and 16 Action, and, as Brown concedes, he had the opportunity to be heard by filing two oppositions—one in each action.

### B. Necessary Parties

The trial court was required to first determine whether the borrower-assignors continued to be necessary parties under the amended complaints. (*Deltakeeper v. Oakdale Irrigation Dist.*, *supra*, 94 Cal.App.4th at p. 1100.)

In contending the borrower-assignors were necessary parties under the amended complaints, DOCX and Black Knight first argued Brown's prosecution of the consolidated cases in the borrower-assignors' absence would prejudice them by extinguishing their right to seek equitable relief with respect to their deeds of trust and other written instruments as: (1) a judgment in Brown's favor would extinguish all equitable and monetary claims that could have been asserted in this action under claim preclusion principles; and (2) even if the borrower-assignors retained their equitable claims, they would be precluded from seeking equitable relief during the pendency of the consolidated actions since this would result in impermissible claim splitting and invoke the exclusive concurrent jurisdiction rule. Noting that the amended complaints continued to allege the borrower-assignors' assignments encompassed all equitable claims arising from their ownership of the properties, DOCX and Black Knight also asserted Brown remained free to reassert equitable claims for relief by amending the prayer for relief and his intent to seek equitable relief was evident by him seeking preliminary injunctions against foreclosure with respect to two of the affected properties.

DOCX and Black Knight also argued the amended complaints did not alleviate the risk the loans could become unsecured, thereby exposing the borrower-assignors to personal liability for the unsecured debts and impairing their interests in being immune from liability for a deficiency. DOCX and Black Knight asserted the validity and

enforceability of the deeds of trust remained central to Brown's factual allegations and requested monetary relief, as Brown was seeking to redress injury to the borrower-assignors caused by defendants alleged wrongful handling of the written instruments including wrongfully initiating foreclosure proceedings.[17] DOCX and Black Knight reasoned that if Brown's prosecution of the monetary claims resulted in a judicial determination that the deeds of trust, promissory notes and other related written instruments were void and unenforceable, and that determination is binding on the borrower-assignors, prosecution of the monetary claims could be construed as an election of remedies that could leave the borrower-assignors open to additional liability under the antideficiency statutes.

In opposition, Brown argued: (1) he could not revive the equitable claims without court permission; (2) while defendants complain that he moved for injunctive relief, the court could prohibit him from seeking such relief; (3) the borrower-assignors gave up the right to file their own actions and did not retain their equitable claims; and (4) the argument that setting aside the assignment of a deed of trust results in a finding the deed of trust and related secured promissory note are void is nonsensical and unsupported by legal authority. Brown claimed the borrower-assignors made absolute assignments of their claims to him, pointing to the assignments attached as exhibits to the amended

---

[17] In support of this argument, DOCX and Black Knight pointed to allegations in the amended complaints that: (1) defendants "failed to follow simple and clear cut rules involving the transfer of real property secured interest and that, as a result, many transfers were void"; (2) which resulted in "systematic and major defects in foreclosure-related instruments filed in local county recorder's offices throughout California" including "deeds of trust, promissory notes, allonges and assignments containing deliberate misstatements and misrepresentations"; making (3) any foreclosure related proceedings following those transfers unauthorized, wrongful and injurious. They also pointed out that Brown contended the transfers were invalid, as he alleged "since MERS was the transferee of both legal and equitable title to the respective Properties, each Deed of Trust was, in contemplation of law, a mortgage, and compliance with Civil Code section 2932.5 was required, in the absence of which each of the Assignments failed …."

27.

complaints which he asserted contained a clause in which the borrower-assignor granted all rights to claims against defendants. Brown asserted that in a "preponderance of cases," the assignment was set forth in two clauses, while a "small minority" of other assignments used "slightly different language." Brown purported both types of assignments clearly transferred all rights to him without reservation.

In finding the borrower-assignors remained necessary parties, the trial court noted our conclusion in *Brown* that the borrower-assignors are necessary parties and must be joined because Brown's claims involve the reformation or nullification of deeds of trust between the borrower-assignors and defendants, thereby implicating the borrower-assignors' individual rights, especially those secured by the antideficiency statutes. The trial court explained that although the amended pleadings dropped the direct claims for reformation or revocation of the deeds of trust, the damage claims would still depend on a court finding that the underlying deeds of trust are void or voidable, which ruling would be res judicata on any subsequent equitable action regarding the deeds of trust; therefore, the borrower-assignors' rights would still be prejudiced by the possibility of being liable for a deficiency judgment.

The trial court stated Brown did not dispute the res judicata effect of his claims; instead, he argued the borrower-assignors would not be able to subsequently seek reformation or recession of the deeds of trust, citing to the assignments purporting to give up such claims. The trial court noted the two versions of the assignments, that Brown did not indicate how many of each type existed or if there were other versions among the many thousands of assignments, and Brown provided no analysis as to the scope of these assignments or whether they could be revoked. The trial court explained that Brown misconstrued the scenario encompassed by the *Brown* decision: "A ruling that the deeds of trust are void would likely have res judicata (or collateral estoppel) effect against a subsequent attempt by Defendants (or their assigns) to enforce the deeds of trust. This would then trigger the issues raised by the anti-deficiency statutes, as noted by the Court

28.

of Appeal." The trial court found it was at best "unclear which assignments are at issue and whether the assignors would be subject to deficiency judgments at a subsequent proceeding based on claim preclusion from a judgment in this case," and, therefore, "the relief sought would injure or affect the interest of the assignors."

On appeal, Brown argues the trial court erred in determining the damage claims would depend on finding the underlying deeds of trust void or voidable. He asserts the amended complaints seek to invalidate only the assignments of the deeds of trust to the parties who foreclosed on the properties, not the deeds of trust themselves; therefore, the borrower-assignors would not lose immunity from liability for a deficiency judgment.

The amended complaints, however, continue to allege that "since MERS was the transferee of both legal and equitable title to the respective Properties, each Deed of Trust was, in contemplation of law, a mortgage, and compliance with Civil Code section 2932.5 was required …." While the amended complaints allege this as a ground for voiding the assignments of the deeds of trust, by this allegation, Brown is effectively seeking a judicial determination the deeds of trust are actually mortgages, which allow only for judicial foreclosure and the entry of a deficiency judgment, unless they contain a power of sale, or they are purchase money mortgages. (*DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659, 663; 4 Witkin, Summary of Cal. Law, *supra*, Security Transactions in Real Property, ch. VIII, § 5.) Thus, there remains a possibility the court could declare the deeds of trust void or voidable, which, if converted to a mortgage, would protect the borrower-assignors only if they are deemed purchase money mortgages or contain a power of sale.

As we held in *Brown*, if the deeds of trust are invalidated and the loans are regarded as unsecured from their inception: (1) the borrower-assignors might be personally liable for the entire unpaid balance of the loan; (2) invalidation of the deeds of trust might be regarded as a creditor's election of remedies, which would allow the creditor to sue the borrower and obtain a money judgment for the outstanding debt; and

29.

(3) the creditor might be able to sue the borrower-assignors personally for the amount of the unsecured debt. (*Brown*, *supra*, F073964, pp. 26-27.) These same concerns continue to apply to the amended complaints and, as we concluded in *Brown*, the borrower-assignors' absence from the action might impair their ability to protect their interest from being personally liable for the entire loan balance. (*Id.*, p. 27.) Moreover, as the trial court found, a ruling invalidating the deeds of trust could bar the borrower-assignors from seeking equitable relief in connection with the financial instruments in a subsequent action. (*Samara v. Matar* (2017) 8 Cal.App.5th 796, 803 [claim preclusion applies to all claims that could have been brought in the earlier lawsuit, whether or not the claim was actually asserted or decided].)

Brown asserts the borrower-assignors cannot be prejudiced by the potential liability for the entire loan balance because they explicitly waived any risks resulting from this litigation, including the potential loss of immunity for deficiency judgments. In support, Brown points to the following allegation made for the first time in the amended complaints: "At the time the assignors executed the assignments, it was explained to them that if their respective deeds of trust were thereafter canceled, declared void or otherwise invalidated in the ensuing litigation, those assignors might become personally liable for the mortgage loans previously secured by their deeds of trust. In each case, the assignors agreed to accept this risk."

In *Brown*, Brown argued that by authorizing and approving the lawsuit, the borrower-assignors impliedly voluntarily accepted the risks of litigation and the potential loss of the protections from personal liability, but he apparently did not assert the borrower-assignors knew or were informed of the risk before executing the assignment. (*Brown*, *supra*, F073964, p. 28.) We determined the assignments themselves did not indicate the borrower-assignors knowingly and intelligently accepted the possible loss of statutory antideficiency protections, and the record lacked evidence, such as declarations stating a borrower-assignor was informed of the risk before executing the assignment, to

30.

support such a finding. (*Id.*, p. 28.) Accordingly, we concluded "Brown has cited no allegations, much less evidence, that the borrower-assignors realized the potential consequences and chose to have Brown proceed with the litigation despite the risks of personal liability." (*Id.*, pp. 28–29.)

In this appeal, Brown still has not cited any evidence to support such a finding. The only thing he points to is the allegation in the amended complaints that the borrower-assignors were apprised of the risk. While the amended complaints are verified, there is nothing to suggest Brown, who was not a party to the assignments between the borrower-assignors and Life Savers, has personal knowledge that each of the over 20,000 borrower-assignors knew and were informed of the risk before executing each assignment. (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1290 [verified allegations based on the pleader's personal knowledge may be considered in deciding § 425.16 motion]; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 656 [to constitute admissible evidence, the allegations in a verified complaint must fall "within the personal knowledge of the verifier"], disapproved on another point by *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.) Given the lack of evidence that the borrower-assignors knowingly and intelligently relinquished the protections from personal liability, the trial court did not abuse its discretion in finding the borrower-assignor's rights would be prejudiced by the possibility of being liable for a deficiency judgment.

Finally, Brown asserts the borrower-assignors conveyed 100 percent of the assigned claims, including all equitable claims, to Life Savers, which conveyed those claims to him. He therefore claims the borrower-assignors did not retain the right to assert equitable claims. Brown, however, misses the point. Even if the borrower-assignors assigned equitable claims arising out of the transactions at issue in the consolidated actions, there may be future actions concerning the deeds of trust, not covered by the assignments, against which a ruling voiding the deeds of trust in the

31.

current actions would have claim or issue preclusive effect. As the trial court pointed out, this would trigger the issues raised by the antideficiency statutes, as we noted in *Brown*.

Accordingly, the trial court did not abuse its discretion in finding the borrower-assignors remained necessary parties to the consolidated actions under the amended complaints. As we found in *Brown*, the borrower-assignors claim an interest relating to the subject matter of the actions and are so situated that the disposition of these actions in their absence may, "as a practical matter impair or impede [their] ability to protect that interest." (§ 389, subd. (a)(2)(i).)[18]

## C. Indispensable Parties

After determining the borrower-assignors were necessary parties under the amended complaints, the trial court considered the factors used to determine whether they also were indispensable parties. (§ 389, subd. (b).) First, the trial court considered the extent to which a judgment may prejudice the absent borrower-assignors and determined the judgment may prejudice them because the relief Brown sought would injure or affect their interests, as the judgment in these cases may subject them to deficiency judgments at a subsequent proceeding based on claim or issue preclusion. Therefore, the trial court found this factor leaned in favor of a finding the borrower-assignors are indispensable parties.

As for whether the prejudice may be lessened or avoided by protective provisions in the judgment or other measures, the trial court noted Brown had amended the pleadings several times and had been offered many opportunities to avoid or lessen the

---

[18]     Given our resolution of the issue concerning necessary parties, we deny Brown's December 29, 2022 and April 20, 2023 motions asking us to take judicial notice of an August 8, 2016 stipulation between Life Savers and the Bureau of Real Estate, as the stipulation is not relevant to our determination of the issues on appeal. (*State Comp. Ins. Fund v. ReadyLink Healthcare, Inc.* (2020) 50 Cal.App.5th 422, 442 [only relevant material is subject to judicial notice].)

32.

prejudice we identified in *Brown*, but none of the amendments had been sufficient and Brown had not offered a viable route to reducing the prejudice or offer suggestions on how to mitigate the concerns. Therefore, the trial court found this factor militated in favor of a finding the borrower-assignors are indispensable.

The trial court next found a judgment rendered in the borrower-assignors' absence did not appear to provide an adequate remedy to the parties before the court. The trial court reasoned that a judgment in these cases would require the court to adjudicate the viability of the deeds of trust between the assignors and the defendant banks by the assignee, which determination could have consequences with respect to potential subsequent litigation between the assignors and banks.

As for whether the borrower-assignors will have an adequate remedy elsewhere if the action was dismissed for nonjoinder, the trial court recognized it was possible the borrower-assignors may have to forfeit some of the claims due to the statute of limitations, but Brown had provided no evidence to demonstrate this would be the result for any of the borrower-assignors. The trial court noted Brown asserted at oral argument the deeds of trust of a number of borrower-assignors had been foreclosed upon, but he offered no evidence of such, and the allegation was not properly before the court. The trial court therefore found this factor did not weigh in favor or against finding the borrower-assignors are indispensable.

Finally, the trial court assessed whether joinder of the borrower-assignors was feasible. The trial court found the fact that neither Brown nor any other party had presented a method to join the thousands of borrower-assignors after several years of litigation and briefing indicated it would not be feasible as a practical or legal matter for joinder to occur. The trial court noted Brown had ample opportunity to seek to vindicate his rights using any other feasible or practical procedural method yet refused to do so.

Based on the foregoing, the trial court found the borrower-assignors in both cases were necessary and indispensable parties for purposes of section 389, and their joinder

33.

would not be feasible. Accordingly, the trial court dismissed both the 15 Action and 16 Action.

On appeal, Brown makes abbreviated arguments concerning the above factors, asserting they were based on erroneous assumptions. He asserts that contrary to the trial court's statement that he "offered no viable route to reducing the prejudice" to the borrower-assignors, he points out he stated during oral argument that the "vast majority of the assignors have lost their homes" and only about 1 percent of them were still residing in their properties; therefore, "[i]t may be feasible to join this remaining 1 percent of the assignors to the action." He also asserts this shows the trial court was wrong in stating that he did not present a method to join the thousands of borrower-assignors when assessing whether joinder was feasible. Even if 1 percent of the approximately 21,000 borrower-assignors remained in their properties, this still involves joining several hundred parties to the litigation. Brown offered no explanation or method on how it would be feasible to join them.

As he argued with respect to whether the borrower-assignors are necessary parties, Brown asserts the trial court incorrectly determined a judgment would require the court to adjudicate the viability of the deeds of trust. But we have rejected that argument and concluded the trial court did not abuse its discretion in finding the viability of the deeds of trust remained an issue.

Brown next takes issue with the trial court's statement that he provided no evidence to demonstrate dismissal of the actions would cause the borrower-assignors to forfeit claims due to the statute of limitations. He asserts he did so in his opposition to the motion to dismiss, when he remarked, in response to the argument that the borrower-assignors could file their own claims if the actions were dismissed, that the 15 Action was filed more than four years ago. Brown, however, provided no analysis of how dismissal would impact the borrower-assignors' claims. Accordingly, the trial court's observation was correct.

Brown asserts the issue of indispensability needs to be reevaluated due to these purported incorrect assumptions. But as we have explained, the trial court's assumptions were correct and supported by the record. We presume the trial court considered the relevant factors when determining whether the borrower-assignors are indispensable parties, and to satisfy his burden of showing an abuse of discretion, Brown "must present meaningful analysis concerning the application of the [] section 389, subdivision (b) factors to the underlying facts." (*Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of America* (2015) 234 Cal.App.4th 1168, 1177.) Brown has not carried his burden. The trial court therefore did not abuse its discretion in resolving the indispensable party issue and dismissing the actions.

## VI. New Trial Motion

The trial court has broad discretion to deny a motion for new trial, and we give great deference to the exercise of that discretion. (*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1160.) A new trial is not appropriate when the error, if any, was harmless. (*Id.* at pp. 1160–1161.)

Brown's new trial motion was based on the same arguments raised in the first part of his appeal. He sets out a laundry list of reasons why the trial court erred in declining to order a new trial, but they are the same arguments raised in opposition to the motion to dismiss, which we have already determined adversely to him.

The only issue that requires further discussion is Brown's assertion the trial court committed an error in law because only 1 percent of the borrower-assignors were still residing in their properties. In his moving papers, Brown argued there was no possible loss of immunity for a deficiency judgment for the borrower-assignors whose foreclosures were complete, and while it "may be feasible to join" the remaining 1 percent of borrower-assignors to the actions, there was no justification for dismissing the amended complaints as to the remainder of the borrower-assignors. Brown asserted exhibit M to the third amended complaint in the 15 Action, which is a list of foreclosed

homeowners, was evidence the trial court could have used "to exclude" the borrower-assignors who lost their properties.

In opposition, DOCX and Black Knight asserted it was "truly brazen" for Brown to assert it may be feasible to join the 1 percent of borrower-assignors still residing in their properties after having nearly four years to propose a method to join them. They further asserted no evidence was cited to support this assertion and Brown still had not identified a feasible or practical method to identify, serve and join any subset of the borrower-assignors.

In reply, Brown presented his attorney's supplemental declarations—one filed in the 15 Action and the other in the 16 Action—to address the claimed lack of evidence. In both declarations, the attorney declared spreadsheets attached to his declarations as Exhibit A, which he stated were prepared by Life Savers employees under Rachel Chavez's supervision, listed all the properties the borrower-assignors were residing in at the commencement of the actions, which he asserted numbered 139 in the 15 Action and 559 in the 16 Action.

DOCX and Black Knight filed objections to the reply brief. As pertinent here, they objected to the trial court considering the spreadsheets on the following grounds: (1) they were unverified exhibits prepared by a third party and were outside the attorney's personal knowledge, lacked foundation, and constituted inadmissible hearsay as they had not been adequately authenticated; (2) Brown did not raise "newly discovered evidence" or "insufficiency of evidence" as grounds for the new trial motion; (3) Brown has not shown he exercised reasonable diligence to discover and submit the spreadsheets; (4) the information in the spreadsheets does not reflect how many property owners still own the listed properties and how many of the properties had been foreclosed on; and (5) Brown failed to produce the information in the spreadsheets in response to special interrogatories DOCX served on Brown in September 2018.

36.

On the evening of the last court day before the hearing, Brown filed responses to the evidentiary objections. To address the lack of foundation and hearsay objections, Brown submitted the declaration of Raquel Chavez, in which she stated she supervised the preparation of the spreadsheets attached to Brown's attorney's supplemental declarations. She declared: (1) the spreadsheets were prepared between November 18 and 25, 2019, with the assistance of three Life Savers employees; (2) they worked from the list of homeowners attached as Exhibit A to the fourth amended complaint in the 15 Action and Exhibit A to the second amended complaint in the 16 Action, to determine whether each homeowner still occupied their property; (3) they consulted several sources to make this determination; and (4) she believed the spreadsheets were accurate and comprehensive tabulations of the homeowners who occupied their original properties as of November 25, 2019.

In ruling on the new trial motion, the trial court did not find a basis for granting it on the ground that 1 percent of the borrower-assignors were still residing in the properties. The trial court ruled: (1) the evidence first was presented in the reply brief without any explanation for why it was not presented in the moving papers, citing *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764; (2) while it would consider the reply, it sustained DOCX and Black Knight's objections to the evidence submitted; (3) assuming it were to consider the evidence, Brown did not explain why it was not presented in connection with the prior hearings on joinder, citing *Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 646; and (4) assuming 1 percent of the assignors still owned their properties, that the vast majority of borrower-assignors' homes had been foreclosed on did not change the analysis, as they remained parties whose rights might be impacted by the ongoing litigation by findings that their deeds of trust were void or voidable, and they are therefore indispensable parties.

On appeal, Brown asserts the trial court erred in sustaining the evidentiary objections and maintains his responses to them showed why they are meritless. He

briefly reviews each objection and his response. He asserts we should review the objections de novo because they require applying the law to undisputed facts, and the trial court acted arbitrarily and capriciously by sustaining the objections in a footnote without explanation. He contends that given the evidence that 87.6 percent of the borrower-assignors in the 15 Action and 97.2 percent of the borrower-assignors in the 16 Action had already gone through the foreclosure process, the mechanics of joining "the few hundred remaining parties" demanded that the trial court reevaluate its determination that joinder was not possible.

The trial court, however, refused to consider the evidence, not only due to the sustained objections, but also because it was not presented with the moving papers. " 'The general rule of motion practice, which applies here, is that new evidence is not permitted with reply papers…. "[T]he inclusion of additional evidentiary matter with the reply should only be allowed in the exceptional case …" and if permitted, the other party should be given the opportunity to respond.' [Citation.] Whether to accept new evidence with the reply papers is vested in the trial court's sound discretion, and we may reverse the trial court's decision only for a clear abuse of that discretion." (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 241.)

We conclude the trial court did not abuse its discretion in declining to consider the spreadsheets because they were not submitted with the moving papers. Brown claims he presented the evidence earlier through an exhibit to the third amended complaint in the 15 Action and by his attorney advising the trial court at the February 6, 2019 hearing that he understood "more than 90 percent" of the borrower-assignors had been foreclosed on. Even if the exhibit and the attorney's representation constituted evidence, it was not presented with the moving papers on the new trial motion.

Brown also asserts he was presenting the evidence in response to DOCX and Black Knight's "demand for 'up-to-the-minute information.' " Brown was the one who asserted in his new trial motion that only 1 percent of the borrower-assignors still owned

their properties.  Brown was aware the trial court found the borrower-assignors were indispensable parties in part because Brown did not offer any evidence to support his assertion that some of them had their deeds foreclosed upon.  Thus, it was incumbent on Brown to submit the evidence with his moving papers.  The trial court was well within its discretion not to consider the evidence submitted with the reply brief, and we do not decide the trial court's alternative grounds for denying the new trial motion on this issue.

## DISPOSITION

The judgment of dismissal and orders are affirmed. Costs on appeal are awarded to respondents.


                                             DE SANTOS, J.

WE CONCUR:


DETJEN, Acting P. J.


MEEHAN, J.